## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

RACHAEL DENHOLLANDER,
LINDSEY LEMKE; JAMIE DANTZSCHER;
DREW, COOPER & ANDING, P.C.; WHITE
LAW P.L.L.C.; MANLY, STEWART &
FINALDI, P.C.; and, APPROXIMATELY 80
VICTIMS OF LAWRENCE GERARD
NASSAR,

              Plaintiffs,

v.

HON. ROSEMARIE E. AQUILINA, Ingham
County Circuit Court Judge (official capacity
only); LAWRENCE GERARD NASSAR;
and, BILL SCHUETTE, Michigan Attorney
General (official capacity only),

              Defendants.

Case No.: 1:17-

HON:

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW, COOPER & ANDING
Attorneys for Plaintiffs
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Ph: (616) 454-8300
E: sdrew@dca-lawyers.com
E: asturdivant@dca-lawyers.com


John C. Manly (CA 149080)
Vince W. Finaldi (CA 238279)
Alex E. Cunny (CA 291567)
MANLY, STEWART & FINALDI
Attorneys for Plaintiffs
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Ph: (949) 252-9990
E: jmanly@manlystewart.com
E: vfinaldi@manlystewart.com
E-mail: acunny@manlystewart.com

James White (P56946)
John W. Fraser (P79908)
Alexander S. Rusek (P77581)
WHITE LAW PLLC
Attorneys for Plaintiffs
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
E: jameswhite@whitelawpllc.com
E: johnfraser@whitelawpllc.com
E: alexrusek@whitelawpllc.com

<u>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**</u>

**NOW COME** Plaintiffs RACHAEL DENHOLLANDER, LINDSEY LEMKE, JAMIE DANTZSCHER, DREW, COOPER & ANDING, P.C., WHITE LAW P.L.L.C., MANLY, STEWART & FINALDI, P.C., and approximately 80 victims of Lawrence Gerard Nassar (collectively "Plaintiffs"), and hereby allege and state as follows:

## I.     PRELIMINARY STATEMENT AND INTRODUCTION

1.     This is a civil action for declaratory and injunctive relief only seeking to redress deprivation of Plaintiffs' constitutional rights. Plaintiffs are not seeking money damages.

2.     Plaintiffs are seeking to enjoin enforcement of an order that was issued by State of Michigan Ingham County Circuit Court Judge Rosemarie E. Aquilina on March 29, 2017 in *People v. Lawrence Gerard Nassar*, Ingham County Circuit Court Case No. 17-143-FC that seeks to "gag" Plaintiffs from speech that is constitutionally protected by the First Amendment (hereinafter "Gag Order").

3.     Plaintiffs are Rachael Denhollander, Lindsey Lemke, Jamie Dantzscher, and more than 80 alleged victims of sexual abuse by Lawrence Gerard Nassar ("Nassar") in various civil actions, as well as the law firms that represent the victims themselves.

4.     In late November 2016, Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13.[1]

5.     In mid-December 2016, Nassar was indicted, arrested, and charged in the United States District Court for the Western District of Michigan in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.[2]

---

[1] *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.
[2] 1:16-cr-000242 PageID.1-4.

1

6.     On or about February 7, 2017, Nassar was indicted on an additional child pornography related charge in the United States District Court for the Western District of Michigan in Grand Rapids, Michigan.[3]

7.     On February 17, 2017, a Preliminary Examination was held on Nassar's criminal charges in 55th District Court Case No. 16-03031-FY in Ingham County, Michigan, and, following the testimony of the victim, the 55th District Court found probable cause to believe Nassar committed the charged offenses and bound that matter over to the Circuit Court for trial.

8.     On February 22, 2017, Michigan Attorney General Bill Schuette (P32532) announced that his office had charged Nassar with 22 additional counts of first-degree criminal sexual conduct based on Nassar's sexual assaults on 9 different victims in Ingham County, Michigan and Eaton County, Michigan.[4]

9.     Due in part to Nassar's prominent position in the community as a physician at Michigan State University, his association with USA Gymnastics and the Olympics, and the number of victims who have come forward, this matter has garnered media attention.

10.    In response to this media attention, Nassar, by and through his attorneys Matthew R. Newburg (P71692) and Shannon M. Smith (P68683), filed a motion seeking to essentially silence all of Nassar's victims and their attorneys from discussing any aspect of their sexual abuse, trampling their First Amendment rights to freedom of speech and expression.

11.    Nassar's motion was titled "Defendant's Emergency Motion to Limit Public Disclosure by

---

[3] 1:16-cr-000242, PageID.86-88.

[4] *People v. Nassar*, Ingham County District Court Case No. 17-00425-FY, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_charges_Feb._2017_552531_7.pdf and *People v. Nassar*, Eaton County District Court Case No. 17-0318-FY, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charges_Feb._2017_552536_7.pdf

Witnesses and Counsel for Witnesses" and was filed on March 27, 2017 in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC (hereinafter "Nassar's Motion").[5]

12. A hearing on Nassar's Motion was held on March 29, 2017 in front of Defendant the Honorable Rosemarie E. Aquilina (hereinafter "the Court").[6]

13. Notably, Plaintiffs were not served with a copy of Nassar's Motion nor were they given notice of the hearing on Nassar's Motion.

14. The media attention and commentary regarding Nassar did not significantly increase or change from the date of Nassar's Preliminary Examination (February 17, 2017) and the date Nassar's Motion was filed (March 27, 2017).

15. The Michigan Attorney General's Office, which is the entity prosecuting Nassar in *People v. Nassar*, took no position on Nassar's Motion at the hearing.[7]

16. During the hearing, the Court added language to the proposed order with attempts to limit the order to matters relating to the *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.

17. The language added by the Court was not explicit, specific, or narrowly tailored, and did not explain or describe in sufficient detail who was covered by the proposed order or the

---

[5] Exhibit 1, Certified Copy of "Emergency Motion to Limit Public Disclosure by Witnesses and Counsel for Witnesses," March 27, 2017 and, Exhibit 2, Certified Copy of "Brief in Support of Emergency Motion to Limit Public Disclosure by Witnesses and Counsel for Witnesses," March 27, 2017

[6] Exhibit 3, Register of Actions ("ROA"), April 3, 2017. Entries 3 and 4 of the ROA indicates the hearing was scheduled for 9:00 AM., heard, and the Order was granted on the Record. Exhibit 4, Certified Copy of Transcript of Hearing on Emergency Motion to Limit Public Disclosure, March 29, 2017. A video of the hearing is also available at https://www.youtube.com/watch?v=2fj3zdPn76o&feature=youtu.be&a (last accessed March 30, 2017).

[7] Exhibit 4, at 10:21 -11:2. (11:1 - "We take no position. We defer to the court").

scope of content restrained.[8]

18.  Following the hearing, the Court granted Nassar's Motion and issued the Gag Order, which has effectively silenced all Plaintiffs, and others, from discussing matters that are clearly protected by the First Amendment and are matters of public importance, as they touch on matters of sexual abuse and the safety of children who participate in youth-oriented sports.[9]

19.  The Gag Order contains 9 provisions, each of which individually is an affront to Plaintiffs' constitutional rights:

    1.  There shall be no attempts, by any lawyer representing a witness or a witness to facilitate the release of information or statement to any third party that pertains to the facts of the case which are not already contained in a public court file, related to this pending matter.

    2.  Any statements released to any third party by a witness or any lawyer representing the witness must be a direct quote –and without elaboration – of a statement contained in a pleading which specifically cite that pleading and the court(s) in which it was filed, related to this file.

    3.  No statements by the witnesses or lawyers representing the witnesses shall discuss the guilt or innocence of Nassar, publically and this pertains to this docket only.

    4.  No statements by the witnesses or lawyers representing the witness shall discuss or comment on the strengths and weaknesses of the case(s), publically and this pertains to this docket only.

    5.  No witnesses or lawyers representing the witnesses shall comment as to the truthfulness of the lawyers involved in this case, publically and this pertains to this docket only.

    6.  No witnesses or lawyers for the witnesses shall vouch or comment on the credibility of the witnesses, publically and this pertains to this docket only.

    7.  Nassar shall be referred to by his name or as the Defendant, publically and

---

[8] Exhibit 5, Order, March 29, 2017. The Court's additions are reflected by the handwritten additions.
[9] *Id*.

this pertains to this docket only.

8.     This order shall be binding upon all parties, all current and potential witnesses and counsel for all current and potential witnesses, related to this case.

9.     The transcript of the Preliminary Examination shall not be distributed except for Trial preparation and shall not be posted on social media or used for any purpose unrelated to trial or to interfere with the rights of The People or Defendant or to interfere with the ability to obtain a fair and impartial jury and this applies to all subsequent transcripts and pleadings until further Order of this Court.

20.   The Gag Order is unquestionably a form of prior restraint and also silences political speech.

21.   Moreover, Plaintiffs lacked notice and an opportunity to be heard regarding their First Amendment rights that are clearly implicated by the Gag Order, which was therefore entered in violation of Plaintiffs' Fifth and Fourteenth Amendment procedural due process rights.

22.   As the Gag Order implicates the First, Fifth, and Fourteenth Amendment rights of multiple individuals, constitutional principles mandate that it be clear, narrowly tailored, and only have been reached after engaging in rigorous constitutional analysis as to each of the individuals implicated, their constitutional rights, and the requested relief.

23.   In response to this affront to Plaintiffs' Constitutional Rights, Plaintiffs seek declaratory relief that the Gag Order is unconstitutional and injunctive relief to enjoin enforcement of the Gag Order.

## II.     JURISDICTION AND VENUE

24.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

25.   This action is brought pursuant to 42 U.S.C. § 1983 to redress deprivation of Plaintiffs'

constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

26. Subject matter jurisdiction is founded upon 28 U.S.C. § 1331 which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

27. Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which gives district courts original jurisdiction over any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

28. District courts have jurisdiction to issue declaratory relief pursuant to 28 U.S.C. § 2201.

29. The claims are cognizable under the United States Constitution and 42 U.S.C. § 1983.

30. The events giving rise to this action occurred in Ingham County, Michigan, which sits in the Southern Division of the Western District of Michigan.

31. Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## III.    PARTIES

32. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

33.     Rachael Denhollander is a citizen of the United State of America, a resident of Kentucky, and a Plaintiff in 1:17-cv-00029 brought against Defendant Nassar, among others.

34.     Lindsey Lemke is a citizen of the United States of America, a resident of Michigan, and a Plaintiff in 1:17-cv-000257 brought against Defendant Nassar, among others.

35.     Jamie Dantzscher is a citizen of the United States of America, a resident of California, and a Plaintiff in California Superior Court, Sacramento County Case No. 34-2016-00200075 brought against Defendant Nassar, among others.

36.     Drew, Cooper & Anding, P.C. is a Michigan law firm based in Grand Rapids, Michigan.

37.     White Law PLLC is a Michigan law firm based in Okemos, Michigan.

38.     Manly, Stewart & Finaldi, P.C. is a California law firm based in Irvine, California.

39.     Collectively, these three law firms (hereinafter collectively the "Law Firm Plaintiffs") represent approximately 80 victims of sexual assault by Nassar.[10]

40.     The remaining Plaintiffs[11] are the victims themselves ("Plaintiff victims").

41.     Judge Rosemarie E. Aquilina is the presiding judge in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC, and is the judge who issued the Gag Order.

42.     The Ingham County Circuit Court sits in Ingham County, Michigan, and Judge Aquilina carries out her official duties as an Ingham County Circuit Court Judge in Ingham County, Michigan.

43.     Judge Aquilina is not entitled to judicial immunity since Plaintiffs are seeking only

---

[10] The number of victims is approximate because each firm continues to receive calls as more victims come forward.
[11] Identified as Jane Does in 1:17-cv-000029, 1:17-cv-000257. Some Jane Does have yet to be added to the previously listed federal cases. Other Jane Does have yet to file suit in other jurisdictions.

declaratory and prospective injunctive relief.[12]

44.    Nassar is the named criminal defendant in *People v. Nassar*, 17-143-FC.

45.    Upon information and belief, Nassar is currently in the custody of the U.S. Marshals in the Western District of Michigan. Prior to being taken into custody, Nassar was a resident of Holt, Ingham County, Michigan.

46.    Nassar was acting under color of state law when he used the Michigan judicial process to deprive Plaintiffs of their First Amendment rights without due process.[13]

47.    Defendant Bill Schuette ("Schuette") is the Michigan Attorney General.

48.    Schuette is not entitled to sovereign immunity since Plaintiffs are seeking only declaratory and prospective injunctive relief.[14]

49.    Schuette's office is criminally prosecuting Nassar in various Michigan courts, including, specifically *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.

50.    Schuette and Nassar, as the parties to *People v. Nassar*, have standing to enforce the Gag Order.

51.    Plaintiffs believe that Nassar and/or Schuette will seek to hold them in contempt for any violations of the Gag Order.

52.    Plaintiffs truthfully believe, based on the statements of the Court at the hearing on Nassar's Motion, that Judge Aquilina will enforce the Gag Order to its fullest extent if informed of a violation, including holding Plaintiffs and others in contempt.

## IV.    GENERAL ALLEGATIONS

53.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous

---

[12] *Pulliam v. Allen*, 466 U.S. 522, 541-43 (1984).
[13] *See, e.g.*, *Shelley v. Kraemer*, 334 U.S. 1, 22-23 (1948).
[14] *See, e.g.*, *Ex Parte Young*, 209 U.S. 123 (1908).

paragraphs.

54.     The First and Fourteenth Amendments to the United States Constitution establish Plaintiffs' rights to freedom of speech, freedom of the press, and freedom of expression.[15]

55.     The Gag Order purports to apply to "all parties, all current and potential witnesses and counsel for all current and potential witnesses."[16]

56.     The actual scope of the Gag Order is vague and staggering in breadth.

57.     Virtually all of the Plaintiff victims and indeed nearly every other victim of Nassar could be a potential witness in each of Nassar's Michigan state court criminal cases pursuant to MCL 768.27a(1), which allows the prosecutor to introduce evidence that Nassar committed other acts of sexual assault against minors for any matter that is relevant, including propensity purposes.[17]

58.     Nassar is criminally charged in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC of committing a listed offense against a minor—namely criminal sexual conduct in the first degree with a person under the age of 13, contrary to MCL 750.520b(1)(a).

59.     The Plaintiff victims have largely alleged that Nassar digitally penetrated their vaginas, and, in some cases, their anuses, without the use of gloves and without their consent under the guise of medical treatment.[18]

---

[15] *See* U.S. CONST. amends. I, XIV; *Gitlow v. New York*, 268 U.S. 652 (1925); *Near v. Minnesota*, 283 U.S. 697 (1931); *NAACP v. Alabama*, 357 U.S. 449 (1958); *Roberts v. United States Jaycees*, 468 U.S. 609 (1984).
[16] Exhibit 5 at ¶ 8.
[17] MCL 768.27a(1) states in relevant part, "[I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." *See also People v. Watkins*, 491 Mich. 450 (2012).
[18] *See*, 1:17-cv-000029, PageID.3372-3428 and 1:17-cv-000257 PageID.1-42.

60.     The vast majority of Plaintiff victims were minors at the time of these assaults.

61.     As a result, these assaults qualify as "listed offenses" pursuant to MCL 768.27a(1), as the allegations support conduct that would be criminally actionable as criminal sexual conduct in the first degree, contrary to MCL 750.520b(1)(b)(iii), or criminal sexual conduct in the third degree, contrary to MCL 750.520d(1)(a).[19]

62.     The Gag Order's purported attempt to limit its scope fails to do so and is impermissibly overbroad from a First Amendment standpoint because it essentially silences every victim.

63.     To date, no witness lists have been filed in any of Nassar's state court criminal proceedings, and Plaintiffs have not received any indication from Nassar or Schuette as to whether any of the Plaintiffs will be called as witnesses in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.

64.     Moreover, the Gag Order's requirement that no information be released, unless it is already contained in a public court file, creates a de facto requirement for any victim who seeks to tell her story publicly to file a lawsuit first.[20]

65.     Plaintiffs have already suffered and continue to suffer a deprivation of their Constitutional rights by virtue of the entry of the Gag Order.

66.     For example, following the entry of the Gag Order, the Plaintiff law firms have received telephone calls from a number of the Plaintiff victims, and other victims who have not yet pursued criminal or civil prosecution, who are concerned they will be thrown in jail or otherwise punished if they come forward publicly.

67.     The Law Firm Plaintiffs are in the process of advising their clients to cease communication

---

[19] Both first and third degree criminal sexual conduct in Michigan are "listed offenses" under the sex offenders registration act. MCL 28.722(j), (w)(iv).
[20] Exhibit 5 at ¶ 1.

with all third parties including law enforcement, media, medical professionals, family and friends due to the potential for violation of the Gag Order.

68.   This type of chilling effect and prior restraint comes "with a heavy presumption against constitutional validity" and is "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stewart*, 427 U.S. 539, 558-59 (1976).

69.   No citizen of the United States should be required to engage the services of an attorney to exercise his or her basic, fundamental constitutional rights.[21]

70.   While most of the Plaintiff victims have chosen to proceed anonymously under pseudonyms due to the incredibly personal nature of their injuries, some have decided to come forward publicly as a means of engaging the political process to advocate for changes to the laws, policies, and procedures that allowed their abuse to occur and to attempt to put an end to child sexual abuse.

71.   Plaintiff Denhollander has decided not to proceed anonymously and has shared her previous experiences with Defendant Nassar with third parties including law enforcement, the Plaintiff Law Firms, the media, and others as an exercise of her First Amendment rights of free speech and expression.

72.   Plaintiff Denhollander desires to continue to exercise her First Amendment rights.[22]

73.   Plaintiff Denhollander believes she will be subject to a contempt order by Defendants if she continues to exercise her First Amendment rights.[23]

74.   Plaintiff Lemke has decided not to proceed anonymously and has shared her previous

---

[21] *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 324 (2010) ("The First Amendment does not permit laws that force speakers to retain a campaign finance attorney . . . before discussing the most salient political issues of our day.").
[22] Exhibit 6, Affidavit of Rachael Denhollander.
[23] *Id.*

experiences with Defendant Nassar with third parties including law enforcement, the Plaintiff Law Firms, and the media, among others as an exercise of her First Amendment rights of free speech and expression.

75. Plaintiff Lemke desires to continue to exercise her First Amendment rights.[24]

76. Plaintiff Lemke believes she will be subject to a contempt order by Defendants if she continues to exercise her First Amendment rights.[25]

77. The underlying subject matter of the Plaintiff victims' lawsuits is of such public importance that Plaintiff Dantzscher testified on March 28, 2017, before the Senate Judiciary Committee, in support of a bill co-sponsored by seventeen Senators, including Ranking Member Dianne Feinstein, requiring mandatory reporting of suspicions of child abuse by federal sports organizations.[26]

78. Plaintiff Dantzscher also desires to continue to exercise her First Amendment rights.[27]

79. Plaintiff Dantzscher believes she will be subject to contempt orders by the Defendants if they continue to exercise their First Amendment rights.[28]

80. These noble causes strike at the very core of the speech that is entitled to the greatest degree of First Amendment protection—political speech.[29]

81. To limit Plaintiffs to only provide "a direct quote—and without elaboration—of a statement contained in a pleading which specifically cite that pleading and the court(s) in

---

[24] Exhibit 7, Affidavit of Lindsey Lemke.

[25] *Id*.

[26] *Protecting Youth Athletes from Abuse: Hearing on S. 534 Before the S. Comm. On the Judiciary*, 115th (2017-2018). *See also,* Exhibit 5, Affidavit of Jamie Dantzscher.

[27] *See*, Exhibit 8, Affidavit of Jamie Dantzscher.

[28] *Id*.

[29] "[P]olitical speech must prevail against laws that would suppress it, whether by design or inadvertence." *Citizens United*, 558 U.S. at 340.

which it was filed" makes a mockery of the First Amendment by essentially turning Plaintiffs—particularly the Plaintiff victims—into mindless automatons who can only speak through formal legal pleadings.[30]

82. Plaintiffs—particularly Plaintiff victims—by this Gag Order have had the entire content and substance of their speech dictated for them.

83. The Gag Order is not narrowly tailored nor is it the least restrictive means to protect Nassar's constitutional rights.

84. Moreover, the manner in which the Gag Order was entered was repugnant to the due process clauses of the Fifth and Fourteenth Amendments for failing to provide Plaintiffs with notice and an opportunity to be heard prior to entry of the Gag Order.[31]

85. The entry of the Gag Order was unconstitutional, and the Gag Order is unconstitutional on its face for vagueness and overbreadth.

## V.    CAUSES OF ACTION

### A.    COUNT ONE

**DEPRIVATION OF FIRST AMENDMENT RIGHTS**
**42 U.S.C. § 1983**
**ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

86. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

87. By enforcing or threatening to enforce the Gag Order, Defendants acting under color of

---

[30] Exhibit 5 at ¶ 2.

[31] "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they required that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); U.S. CONST. amends. V, XIV.

state law, have deprived and will continue to deprive Plaintiffs of their First Amendment rights to freedom of speech and expression.

88.   Orders which restrict or preclude a citizen from speaking in advance are known as prior restraints.

89.   The loss of First Amendment freedoms, for even minimal periods of time constitutes irreparable harm.[32]

90.   Each passing day of prior restraint on speech may constitute separate and cognizable infringement of the First Amendment.[33]

91.   An actual controversy exists between the parties, and Plaintiffs have suffered and continue to suffer irreparable harm by virtue of the entry and existence of the Gag Order because it functions as a prior restraint on speech that is protected by the First Amendment.

92.   The Gag Order is also unconstitutionally vague, as it is not clear which parties it actually covers and what conduct or speech falls under its scope.[34]

93.   Defendant Nassar in his Brief supporting his emergency Motion for the Gag Order indicated "there are more than 100 potential complainants against Nassar and some may be necessary 404b witnesses."[35]

94.   It is believed the Law Firm Plaintiffs represent some of the individuals included amongst the 100 potential complainants.

95.   Defendant Nassar also indicated in his Brief that he intends to call Attorney White as a witness even though Attorney White represents no individuals involved with nor has any

---

[32] *See, Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976).
[33] *Nebraska Press Assn.*, 423 U.S. 1327, 1329, 96 S.Ct. 251, 254 (1975).
[34] *See Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S.Ct. 349 (1972).
[35] Exhibit 2, page 3, fn. 1.

personal knowledge of facts implicated in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.[36]

96.    Plaintiffs Denhollander, Lemke, and Dantzscher have exercised their First Amendment rights of freedom of speech and expression by publicly sharing information with third parties including law enforcement, the Senate Judiciary Committee, the media, and the Law Firm Plaintiffs regarding allegations of their past experiences with Defendant Nassar.[37]

97.    Dozens of Plaintiffs have exercised their First Amendment rights of freedom of speech and expression and shared information regarding their past experiences with Defendant Nassar by making criminal complaints with law enforcement agencies.

98.    Many Plaintiffs have exercised their First Amendment rights of freedom of speech and expression by sharing information with medical professionals, other potential victims of sexual abuse, family, and close friends regarding the emotional and mental distress they have experienced as a result of the allegations contained in their Complaints.

99.    Additionally, the Law Firm Plaintiffs, on behalf of their clients, have exercised their First Amendment rights of freedom of speech and expression by responding to media requests regarding the lawsuits.

100.    Plaintiffs desire to continue to exercise their First Amendment rights to free speech and expression.[38]

101.    At a minimum, Paragraphs 1, 2 and 8 of the Gag Order, when read together, could be

---

[36] *Id.*

[37] *See forthcoming*, Brief in Support of Plaintiffs Motion for a Temporary Restraining Order and Motion for Summary Judgment.

[38] *See*, Exhibits 3, 4, and 5.

construed as limiting Plaintiffs' ability to discuss the case with reporters as well as other third parties including law enforcement, medical professionals, family, friends, the media, and even legal counsel.

102.   Gag orders directed at trial participants must be narrowly tailored to specifically limit or prevent only the disclosure of particularly prejudicial evidence or conduct.

103.   The Gag Order is not narrowly tailored as it fails to define or identify who is included in the terms and phrases "Witnesses," "Counsel for Witnesses," "all current and potential witnesses," and "counsel for all current and potential witnesses."

104.   The Gag Order fails to define or identify who are "third parties."

105.   Plaintiffs have reason to believe the Gag Order could be construed by Defendants in a manner in which they and their clients would be considered included among the individuals identified as "potential witnesses"/"counsel for … potential witnesses."

106.   Plaintiffs and their clients have legitimate concerns that their ability to continue to exercise First Amendment rights of freedom of speech and expression as described above is impaired by the Gag Order.

107.   A proper gag order should be explicit as to which conduct is allowed and which conduct is proscribed.

108.   The Gag Order is not explicit and instead addresses prohibited conduct in general terms, making it difficult to determine which conduct is allowed and which conduct is proscribed.

109.   The scope of the Gag Order is unclear, vague, and overbroad, constituting an unconstitutional prior restraint on Plaintiffs' First Amendment freedoms.

110.   A prior restraint cannot be upheld if reasonable alternatives are available having lesser impact on First Amendment freedoms.

111.    Although the Court attempted to add limiting language to the Gag Order, the Court did not engage in analysis or make any findings of fact regarding whether there were disclosures of conduct that were particularly prejudicial rising to the level of a serious and imminent threat to Defendant Nassar's competing protected interest.

112.    The Court also did not engage in analysis or make any findings of fact of whether there were alternatives with lesser impact on Plaintiffs' First Amendment freedoms.

113.    As a direct and/or proximate cause of Defendants' actions in seeking, obtaining, enforcing, or threatening to enforce the Gag Order, Plaintiffs have suffered and continue to suffer irreparable harm to their First and Fourteenth Amendment rights to freedom of speech, press, and expression.

    **B.      COUNT TWO**

**DEPRIVATION OF DUE PROCESS RIGHTS**
**42 U.S.C. § 1983**
**ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

114.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

115.    The Due Process Clauses of the Fifth and Fourteenth Amendments guarantee Plaintiffs, at a minimum, the right to notice and an opportunity to be heard before deprivation of their liberty, including their First and Fourteenth Amendment rights to freedom of speech, press, and expression.

116.    By seeking to obtain and issuing the Gag Order without providing Plaintiffs notice and an opportunity to be heard, Defendants acting under color of state law have deprived and will continue to deprive Plaintiffs of due process of law.

117.    An actual controversy exists between the parties, and Plaintiffs have suffered and continue

to suffer irreparable harm by virtue of the entry and existence of the Gag Order because it deprives Plaintiffs of constitutional rights without due process of law.

118.   A prior restraint issued prior to a full and fair hearing faces an even heavier presumption of invalidity.[39]

119.   In addition to guaranteeing a third-party's due process rights, giving notice and a hearing increases the likelihood that any impingement on First Amendment rights that might follow will be well-founded.

120.   Defendant Nassar failed to serve Plaintiffs with a copy of the Motion and Brief despite the fact Plaintiffs were referenced in those filings as potential witnesses (*i.e.,* "more than 100 potential complainants against Nassar").[40]

121.   The Court did not adjourn and reschedule the hearing on the motion to allow those who may be affected by the Gag Order to appear before the Court and be heard, including Plaintiffs.

122.   The Court did not fully consider the effect the Gag Order could have on the First Amendment rights of Plaintiffs, other victims, or the press.

123.   At a minimum, Paragraphs 1, 2, and 8 of the Gag Order, when read together, could be construed as limiting Plaintiffs' ability to discuss the case with reporters as well as other third parties including law enforcement, medical professionals, family, close friends, and

---

[39] *See*, *In re Providence Journal Co.*, 820 F.2d 1342 *modified on reh'g by* 820 F.2d 1354, 1351 (1st Cir. 1986), *cert. granted and dismissed on other* grounds. In *Providence Journal*, the district court issued a temporary restraining order prohibiting a newspaper from publishing certain information in its possession and scheduled a hearing for several days later. The First Circuit found that the TRO constituted an unconstitutional prior restraint on pure speech. The court acknowledged the matter had come before the district court "on an emergency basis" but concluded absent the most compelling circumstances, because the approach resulted in a prior restraint on pure speech by the press it was impermissible and unconstitutional.
[40] *See*, Exhibit 1, Brief at p. 3, fn. 1.

even legal counsel.

124. Guidance from the Michigan Criminal Proceedings Benchbook[41] suggests a court should use MCR 8.116(D)(1) when assessing whether to grant a gag order prohibiting discussion of a case with reporters which requires a Court to identify a specific interest to be protected, narrowly tailor the denial of access, and to state on the record the specific reasons for the court's decision to limit access to the proceeding.

125. In issuing the Gag Order, the Court identified -- in very general terms -- Defendant Nassar's Sixth Amendment right to a fair trial as an interest justifying the Order.

126. The Court did not engage in any extensive analysis regarding whether there is a "reasonable likelihood" that pretrial publicity will prejudice a fair trial for Defendant Nassar.

127. The Court did not make any findings of fact or conclusions of law indicating a "reasonable likelihood" that Defendant Nassar's right to a fair trial would be prejudiced absent entry of the Gag Order.

128. The Court did not explore whether other available remedies would effectively mitigate any prejudicial pretrial publicity alleged by Defendant Nassar such as postponement of trial, a focus on the issue during voir dire, special jury instructions, or jury sequestration.

129. Although the Court added some language to the Gag Order during the hearing, the additional language failed to sufficiently narrowly tailor the Gag Order leaving it vague and overbroad.

130. As Plaintiffs received no notice of the hearing and the hearing did not comport with MCR 8.116(D)(1), Plaintiffs Fifth and Fourteenth Amendment procedural due process rights

---

[41] Criminal Proceedings Benchbook, Volume 1, Section 1.1, Page 1-3, "C. Gag Orders." Available at, https://mjieducation.mi.gov/documents/benchbooks/20-crimv2/file. Last accessed, March 29, 2017.

were violated.

131.     As a direct and/or proximate cause of Defendants' actions in seeking, obtaining, enforcing, or threatening to enforce the Gag Order, Plaintiffs have suffered and continue to suffer irreparable harm to their First and Fourteenth Amendment rights to freedom of speech, press, and expression.

## VI.     RELIEF REQUESTED

132.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

133.     The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiffs' Constitutional and Federal rights, and the United States District Court has jurisdiction to hear and adjudicate said claims.

134.     In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiffs have and continue to suffer irreparable harm as a result of the violations.

**WHEREFORE**, Plaintiffs request that this Court enter a Judgment in Plaintiffs' favor against all named Defendants on all counts and claims as indicated above and award Plaintiffs the following relief:

a)   A declaration of Plaintiffs' rights holding that the Gag Order is unenforceable as an unconstitutional prior restraint of Plaintiff's First and Fourteenth Amendment freedoms of free speech and expression;

b)   A declaration of Plaintiffs' rights holding that the Gag Order was entered in a manner which violated Plaintiffs' Fifth and Fourteenth Amendment procedural due process rights;

c)   An injunction to enjoin to Defendants from enforcing the Gag Order; and,

d) Plaintiffs' interests, costs, and attorney fees pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

Dated: April 4, 2017          By:     /s/ Stephen R. Drew
                                      Stephen R. Drew (P24323)
                                      Adam C. Sturdivant (P72285)
                                      DREW, COOPER & ANDING
                                      Attorneys for Plaintiffs
                                      80 Ottawa Avenue NW, Suite 200
                                      Grand Rapids, Michigan 49503
                                      Ph: (616) 454-8300
                                      E: sdrew@dca-lawyers.com
                                      E: asturdivant@dca-lawyers.com


Dated: April 4, 2017          By:     /s/ James White
                                      James White (P56946)
                                      John W. Fraser (P79908)
                                      Alexander S. Rusek (P77581)
                                      WHITE LAW PLLC
                                      Attorneys for Plaintiffs
                                      2549 Jolly Road, Suite 340
                                      Okemos, Michigan 48864
                                      Ph: (517) 316-1195
                                      E: jameswhite@whitelawpllc.com
                                      E: johnfraser@whitelawpllc.com
                                      E: alexrusek@whitelawpllc.com


Dated: April 4, 2017          By:     /s/ John C. Manly
                                      John C. Manly (CA 149080)
                                      Vince W. Finaldi (CA 238279)
                                      Alex E. Cunny (CA 291567)
                                      Manly, Stewart & Finaldi
                                      Attorneys for Plaintiffs
                                      19100 Von Karman Avenue, Suite 800
                                      Irvine, CA 92612
                                      Ph.: (949) 252-9990
                                      E: jmanly@manlystewart.com
                                      E: vfinaldi@manlystewart.com
                                      E: acunny@manlystewart.com

## INDEX OF EXHIBITS

**Exhibit**                                                          **Description**

1.............................................Certified Copy of Emergency Motion to Limit Public Disclosure by
Witnesses and Counsel for Witnesses, March 27, 2017

2...................................................................................Certified Copy of Brief in Support of
Emergency Motion to Limit Public Disclosure by
Witnesses and Counsel for Witnesses, March 27, 2017

3.......................................................................................Certified Copy, Register of Actions,
Ingham County Circuit Case No. 17-000143-FC-C30

4.................................................................................Certified Copy, Transcript of Hearing on
Emergency Motion to Limit Public Disclosure, March 29, 2017

5.....................................................................................Certified Copy of Order, March 29, 2017

6............................................................................ Affidavit of Rachael Denhollander, April 3, 2017

7.................................................................................. Affidavit of Lindsey Lemke, April 3, 2017

8................................................................................Affidavit of Jamie Dantzscher, April 3, 2017