## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

RACHAEL DENHOLLANDER;
LINDSEY LEMKE; JAMIE DANTZSCHER;
DREW, COOPER & ANDING, P.C.; WHITE
LAW P.L.L.C.; MANLY, STEWART &
FINALDI, P.C.; and, APPROXIMATELY 80
VICTIMS OF LAWRENCE GERARD
NASSAR,

               Plaintiffs,

v.

HON. ROSEMARIE E. AQUILINA, Ingham
County Circuit Court Judge (official capacity
only); and, LAWRENCE GERARD
NASSAR,

               Defendants.

Case No.: 1:17-cv-305

HON. JANET T. NEFF

**FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF**

---

| | |
|---|---|
| Stephen R. Drew (P24323) | James White (P56946) |
| Adam C. Sturdivant (P72285) | John W. Fraser (P79908) |
| DREW, COOPER & ANDING | Alexander S. Rusek (P77581) |
| Attorneys for Plaintiffs | WHITE LAW PLLC |
| 80 Ottawa Avenue NW, Suite 200 | Attorneys for Plaintiffs |
| Grand Rapids, Michigan 49503 | 2549 Jolly Road, Suite 340 |
| Ph: (616) 454-8300 | Okemos, Michigan 48864 |
| E: sdrew@dca-lawyers.com | Ph.: (517) 316-1195 |
| E: asturdivant@dca-lawyers.com | E: jameswhite@whitelawpllc.com |
| | E: johnfraser@whitelawpllc.com |
| | E: alexrusek@whitelawpllc.com |
| | |
| John C. Manly (CA 149080) | Brian D. Einhorn (P13130) |
| Vince W. Finaldi (CA 238279) | COLLINS EINHORN FARRELL |
| Alex E. Cunny (CA 291567) | Attorneys for Defendant Aquilina |
| MANLY, STEWART & FINALDI | 4000 Town Center, Floor 9 |
| Attorneys for Plaintiffs | Southfield, Michigan 48075 |
| 19100 Von Karman Avenue, Suite 800 | Ph.: (248) 355-4141 |
| Irvine, California 92612 | E: Brian.Einhorn@ceflawyers.com |
| Ph: (949) 252-9990 | |
| E: jmanly@manlystewart.com | |
| E: vfinaldi@manlystewart.com | Defendant Lawrence Gerard Nassar |
| E: acunny@manlystewart.com | *In Pro Per* |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**NOW COME** Plaintiffs RACHAEL DENHOLLANDER, LINDSEY LEMKE, JAMIE DANTZSCHER, DREW, COOPER & ANDING, P.C., WHITE LAW P.L.L.C., MANLY, STEWART & FINALDI, P.C., and approximately 80 victims of Lawrence Gerard Nassar (collectively "Plaintiffs"), and hereby amend their Complaint for Declaratory and Injunctive Relief filed in this matter on April 4, 2017 as a matter of course pursuant to FED. R. CIV. P. 15(a)(1)(A) and allege and state as follows:

I.      **PRELIMINARY STATEMENT AND INTRODUCTION**

1.      This is a civil action for declaratory and injunctive relief only seeking to redress deprivation of Plaintiffs' constitutional rights. Plaintiffs are not seeking money damages.

2.      Plaintiffs are seeking to enjoin enforcement of an order that was issued by State of Michigan Ingham County Circuit Court Judge Rosemarie E. Aquilina on April 12, 2017 in *People v. Lawrence Gerard Nassar*, Ingham County Circuit Court Case No. 17-143-FC that seeks to "gag" Plaintiffs from speech that is constitutionally protected by the First Amendment (hereinafter "Second Gag Order").

3.      Plaintiffs are Rachael Denhollander, Lindsey Lemke, Jamie Dantzscher, and more than 80 alleged victims of sexual abuse by Lawrence Gerard Nassar ("Nassar") in various civil actions, as well as the law firms that represent the victims themselves.

4.      In late November 2016, Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13.[1]

---

[1] *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.

5.      In mid-December 2016, Nassar was indicted, arrested, and charged in the United States District Court for the Western District of Michigan in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.[2]

6.      On or about February 7, 2017, Nassar was indicted on an additional child pornography related charge in the United States District Court for the Western District of Michigan in Grand Rapids, Michigan.[3]

7.      On February 17, 2017, a Preliminary Examination was held on Nassar's criminal charges in 55th District Court Case No. 16-03031-FY in Ingham County, Michigan, and, following the testimony of the victim, the 55th District Court found probable cause to believe Nassar committed the charged offenses and bound that matter over to the Circuit Court for trial.

8.      On February 22, 2017, Michigan Attorney General Bill Schuette (P32532) announced that his office had charged Nassar with 22 additional counts of first-degree criminal sexual conduct based on Nassar's sexual assaults on 9 different victims in Ingham County, Michigan and Eaton County, Michigan.[4]

9.      Due in part to Nassar's prominent position in the community as a physician at Michigan State University, his association with USA Gymnastics and the Olympics, and the number of victims who have come forward, this matter has garnered media attention.

10.     In response to this media attention, Nassar, by and through his attorneys Matthew R.

---

[2] 1:16-cr-000242 PageID.1-4.
[3] 1:16-cr-000242, PageID.86-88.
[4] *People v. Nassar*, Ingham County District Court Case No. 17-00425-FY, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_charges_Feb._2017_552531_7.pdf and *People v. Nassar*, Eaton County District Court Case No. 17-0318-FY, *see also,* http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charges_Feb._2017_552536_7.pdf

Newburg (P71692) and Shannon M. Smith (P68683), filed a motion seeking to essentially silence all of Nassar's victims and their attorneys from discussing any aspect of their sexual abuse, trampling their First Amendment rights to freedom of speech and expression.

11.    Nassar's motion was titled "Defendant's Emergency Motion to Limit Public Disclosure by Witnesses and Counsel for Witnesses" and was filed on March 27, 2017 in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC (hereinafter "Nassar's Motion").[5]

12.    A hearing on Nassar's Motion was held on March 29, 2017 in front of Defendant the Honorable Rosemarie E. Aquilina (hereinafter "the Court").[6]

13.    Notably, Plaintiffs were not served with a copy of Nassar's Motion nor were they given notice of the hearing on Nassar's Motion.

14.    The media attention and commentary regarding Nassar did not significantly increase or change from the date of Nassar's Preliminary Examination (February 17, 2017) and the date Nassar's Motion was filed (March 27, 2017).

15.    The Michigan Attorney General's Office, which is the entity prosecuting Nassar in *People v. Nassar*, took no position on Nassar's Motion at the hearing.[7]

16.    During the hearing, the Court added language to the proposed order with attempts to limit the order to matters relating to the *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.

---

[5] *See*, 1:17-cv-305, PageID.24-87.

[6] *Id*. at PageID.88-90. Entries 3 and 4 of the ROA indicates the hearing was scheduled for 9:00 AM., heard, and the Order was granted on the Record. *Id*. at PageID.91-100. A video of the hearing is also available at  https://www.youtube.com/watch?v=2fj3zdPn76o&feature=youtu.be&a  (last accessed March 30, 2017).

[7] *Id*. at PageID.94 (Transcript at 10:21 -11:2) (11:1 - "We take no position. We defer to the court").

17.  The language added by the Court was not explicit, specific, or narrowly tailored, and did not explain or describe in sufficient detail who was covered by the proposed order or the scope of content restrained.[8]

18.  Following the hearing, the Court granted Nassar's Motion and issued the First Gag Order, which effectively silenced all Plaintiffs, and others, from discussing matters that are clearly protected by the First Amendment and are matters of public importance, as they touch on matters of sexual abuse and the safety of children who participate in youth-oriented sports.[9]

19.  The First Gag Order contained 9 provisions, each of which individually was an affront to Plaintiffs' constitutional rights:

1.  There shall be no attempts, by any lawyer representing a witness or a witness to facilitate the release of information or statement to any third party that pertains to the facts of the case which are not already contained in a public court file, related to this pending matter.

2.  Any statements released to any third party by a witness or any lawyer representing the witness must be a direct quote –and without elaboration – of a statement contained in a pleading which specifically cite that pleading and the court(s) in which it was filed, related to this file.

3.  No statements by the witnesses or lawyers representing the witnesses shall discuss the guilt or innocence of Nassar, publically and this pertains to this docket only.

4.  No statements by the witnesses or lawyers representing the witness shall discuss or comment on the strengths and weaknesses of the case(s), publically and this pertains to this docket only.

5.  No witnesses or lawyers representing the witnesses shall comment as to the truthfulness of the lawyers involved in this case, publically and this pertains to this docket only.

6.  No witnesses or lawyers for the witnesses shall vouch or comment on the credibility of the witnesses, publically and this pertains to this docket only.

---

[8] *Id.* at PageID.102-103. The Court's additions are reflected by the handwritten additions.
[9] *Id.*

7.      Nassar shall be referred to by his name or as the Defendant, publically and this pertains to this docket only.

8.      This order shall be binding upon all parties, all current and potential witnesses and counsel for all current and potential witnesses, related to this case.

9.      The transcript of the Preliminary Examination shall not be distributed except for Trial preparation and shall not be posted on social media or used for any purpose unrelated to trial or to interfere with the rights of The People or Defendant or to interfere with the ability to obtain a fair and impartial jury and this applies to all subsequent transcripts and pleadings until further Order of this Court.

20.   The First Gag Order was unquestionably a form of prior restraint and silenced political speech.

21.   On April 4, 2017, Plaintiffs filed their initial Complaint for Declaratory and Injunctive Relief in this matter requesting a declaration of Plaintiffs' rights that the First Gag Order was an unenforceable and unconstitutional prior restraint of Plaintiffs' First and Fourteenth Amendment freedoms of free speech and expression and that it was entered in a manner which violated Plaintiffs' Fifth and Fourteenth Amendment procedural due process rights.

22.   Plaintiffs also requested injunctive relief to enjoin Defendants from enforcing the First Gag Order and concurrently filed a Motion for Temporary Restraining Order[10] and Supporting Brief.[11]

23.   On April 7, 2017, this Court granted Plaintiffs Motion for Temporary Restraining Order and entered a temporary restraining order that enjoined Defendants from enforcing the First Gag Order.[12]

---

[10] *Id*. at PageID.125-128.
[11] Id. at PageID.133-160.
[12] *Id*. at PageID.271-278.

24.   This Court also Ordered Plaintiffs to serve the Complaint, Summons, Motion for Temporary Restraining Order and accompanying documents on Defendants.[13]

25.   Plaintiffs complied with this Court's Order regarding service.[14]

26.   This Court also Ordered Defendants to file responses to Plaintiffs' Motion for Temporary Restraining Order not later than Thursday, April 13, 2017.[15]

27.   On April 12, 2017, Defendant Aquilina's assistant sent via e-mail a new Order titled "Order Limiting Public Disclosures by Covered Individuals" (hereinafter, "Second Gag Order") to Plaintiffs Drew, Cooper & Anding, Manly Stewart & Finaldi, and White Law, among others.

28.   The e-mail indicated the Second Gag Order had been entered in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.[16]

29.   The Second Gag Order[17] states in its entirety:

### ORDER LIMITING PUBLIC DISCLOSURES BY COVERED INDIVIDUALS

One of this Court's paramount concerns is ensuring a fair trial to all parties. This concern prompted this Court's March 29, 2017 Order (the *"Original Order"*) limiting public disclosures by witnesses and counsel for witnesses in *People v Nassar,* Case No. 17-143-FC (the *"Criminal Case"*).

After entry of the Original Order, certain individuals and entities filed a federal lawsuit against this Court, Lawrence Nassar, and Attorney General Bill Schuette to enjoin enforcement of the Original Order. See *Denhollander v Aquilina,* W.D. Mich., Case No. 1:17-cv-00305. Based on the allegations in *Denhollander,* it appears that those individuals and entities misunderstand the scope and intent of

---

[13] *Id*. at PageID.278.

[14] *Id*. at PageID.268, 270, 280-282, 283. Defendant Nassar was personally served on April 8, 2017 at the Newaygo County Jail where he is currently in the custody of the United States Marshals.

[15] *Id*. at 278.

[16] Exhibit 1, E-mail, April 12, 2017. Exhibit 2, Certified Copy of Register of Actions, April 13, 2017.

[17] Exhibit 3, Certified Copy of Order Limiting Public Disclosures by Covered Individuals, April 12, 2017.

the Original Order. Therefore, this Court vacates the Original Order and issues this Order (the *"Public-Disclosure Order")* to continue protecting the right to a fair trial with an impartial jury and prevent extrajudicial comments that would not only create a "carnival atmosphere," but would also prejudice this Court's ability to conduct a fair trial. *US v Scarfo,* 263 F3d 80, 94 (3d Cir 2001); *US v Brown,* 218 F3d 415 (5th Cir 2000). Accordingly, this Public-Disclosure Order is intended to address what this Court views as mistaken statements and beliefs about the intent of the Original Order.

Now, therefore, IT IS ORDERED:

1. The Original Order is vacated.

2. This Public-Disclosure Order applies *only* to *Covered Individuals.* A Covered Individual is one of the following:

      a. A party in the Criminal Case,

      b. An attorney who represents a party in the Criminal Case (and any member or employee of that attorney's law firm),

      c. An individual who has been (i) named in a court filing as a witness in the Criminal Case and (ii) served with a copy of this Order, with service established through a proof of service filed in the Criminal Case, or

      d. An attorney who represents a witness as described in Paragraph 2(c) of this order (and any member or employee of that attorney's law firm).

3. Attorneys in the Criminal Case are responsible for serving a copy of this Public Disclosure Order on any witness that they list in court filings, and for filing a proof of service.

4. Any witness or attorney who becomes a Covered Individual through Paragraphs 2(c) or 2(d) of this Public-Disclosure Order may file an objection with this Court within 14 days of service of the order. This objection must be accompanied by a brief explaining the basis for that individual's objection and providing supporting legal authority. The objecting party must serve a copy on other parties in the Criminal Case.

5. "Publicly," as used in this Public-Disclosure Order, has its common meaning, and it includes statements on social media and statements to representatives of print, online, or television media. See, e.g., Random House Webster's Unabridged Dictionary (2d ed. 2001), p 1563 (defining publicly as "in a public or open manner or place").

6. Except as stated in this order, no Covered Individual may publicly share

information relating to the Criminal Case, other than information available in a public court file.

7. If a Covered Individual shares information about the Criminal Case that is available in a public court file, the Covered Individual may only share direct quotations (without elaboration) from publicly available documents and must identify the document quoted.

8. No Covered Individual may publicly discuss the guilt or innocence of Defendant Lawrence Nassar with respect to the charges in the Criminal Case.

9. No Covered Individual may publicly discuss the strengths or weaknesses of the claims against Nassar in the Criminal Case.

10. No Covered Individual may publicly comment on the truthfulness or credibility of any other Covered Individual regarding the allegations in the Criminal Case.

11. When commenting publicly about the Criminal Case, a Covered Individual may not refer to Nassar by any word other than his name or "the defendant."

12. No Covered Individual may publicly disseminate the transcript of Nassar's preliminary examination in the Criminal Case or any other transcript in the Criminal Case.

13. No Covered Individual may possess a copy of the transcript of Nassar's preliminary examination unless the Covered Individual (or his or her law firm) has paid the necessary fee for a copy of that transcript. If a Covered Individual (or his or her law firm) has a copy of the transcript for which neither the Covered Individual nor his or her law firm has paid, the Covered Individual must immediately destroy all copies.

14. Nothing in this order shall be interpreted as prohibiting a Covered Individual from discussing civil or criminal claims against Nassar other than the specific claims at issue in the Criminal Case.

15. Nothing in this order shall be interpreted as prohibiting a Covered Individual from making any statement to law-enforcement agencies, medical personnel, therapists, attorneys, government agents, or similar parties about the Criminal Case or their personal experience with Nassar.

16. All attorneys participating in the Criminal Case are reminded of their obligations under Michigan Rule of Professional Conduct 3.6. This Court takes lawyers' ethical responsibilities seriously and is obligated to report any misconduct "that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer" to the Attorney Grievance Commission, as required under Michigan Rule of Professional Conduct 8.3(a).

17. This Public-Disclosure Order will remain in effect until the Criminal Case has ended and all direct appeals have concluded.

IT IS SO ORDERED.

30.   Defendant Nassar did not file any response to Plaintiff's Motion for Temporary Restraining Order by the deadline and as of the time of filing this Amended Complaint has yet to file a response.

31.   Michigan Attorney General Bill Schuette filed a stipulation indicating that neither he nor any of his agents will seek to enforce the Second Gag Order and that it is also the opinion of his office that both the First Gag Order and the Second Gag Order unconstitutionally infringe on the First Amendment rights of Plaintiffs.[18]

32.   As a result, Plaintiffs and Michigan Attorney General Bill Schuette stipulated to his Dismissal on April 13, 2017.[19]

33.   On April 13, 2017, Defendant Judge Aquilina filed a Response in Opposition to Plaintiff's Motion for Temporary Restraining Order requesting Dismissal of this action based on mootness by virtue of entry of the Second Gag Order.[20]

34.   Despite its purported narrower scope, the Second Gag Order still operates as an unconstitutional prior restraint on Plaintiffs' First and Fourteenth Amendment Rights.

35.   Additionally, as with the First Gag Order, Plaintiffs were not provided with notice and an opportunity to be heard regarding their First Amendment rights that are clearly implicated

---

[18] PageID.322-327.
[19] *Id.* Although the Stipulation and Proposed Order (PageID. 322-327) was denied as moot by this Court on April 14, 2017 (PageID.344-346), Plaintiffs' do not include Mr. Schuette as a defendant in this Amended Complaint because the Attorney General agreed in the Stipulation to not enforce the Second Gag Order.
[20] *Id.* at 284-321.

by the Second Gag Order.

36.   Both the First Gag Order and Second Gag Order were entered in violation of Plaintiffs'
      Fifth and Fourteenth Amendment procedural due process rights.

37.   As the First Gag Order and Second Gag Order implicate the First, Fifth, and Fourteenth
      Amendment rights of multiple individuals, constitutional principles mandate that they be
      clear, narrowly tailored, and only issued, if at all, after engaging in rigorous constitutional
      analysis as to each of the individuals implicated, their constitutional rights, and the
      requested relief.

38.   There was no fact finding regarding harm to Nassar's constitutional right to a fair trial nor
      was there any rigorous constitutional analysis by Judge Aquilina prior to entry of either the
      First Gag Order or the Second Gag Order.

39.   In response to these continued affronts to Plaintiffs' Constitutional Rights, Plaintiffs seek
      declaratory relief that the First Gag Order and Second Gag Order are unconstitutional, and
      injunctive relief to enjoin enforcement of the Second Gag Order.

40.   A hearing on Plaintiffs' Motion for Temporary Restraining Order is set for Tuesday, April
      18, 2017 at 1:30 p.m.[21]

## II.   JURISDICTION AND VENUE

41.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding
      paragraphs.

42.   This action is brought pursuant to 42 U.S.C. § 1983 to redress deprivation of Plaintiffs'
      constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States
      Constitution.

---

[21] *Id*. at PageID.278, 279.

43.  Subject matter jurisdiction is founded upon 28 U.S.C. § 1331 which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

44.  Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which gives district courts original jurisdiction over any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

45.  District courts have jurisdiction to issue declaratory relief pursuant to 28 U.S.C. § 2201.

46.  The claims are cognizable under the United States Constitution and 42 U.S.C. § 1983.

47.  The events giving rise to this action occurred in Ingham County, Michigan, which sits in the Southern Division of the Western District of Michigan.

48.  Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

### III.  PARTIES

49.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

50.  Rachael Denhollander is a citizen of the United State of America, a resident of Kentucky, and a Plaintiff in 1:17-cv-00029 brought against Defendant Nassar, among others.

51. Lindsey Lemke is a citizen of the United States of America, a resident of Michigan, and a Plaintiff in 1:17-cv-000257 brought against Defendant Nassar, among others.

52. Jamie Dantzscher is a citizen of the United States of America, a resident of California, and a Plaintiff in California Superior Court, Sacramento County Case No. 34-2016-00200075 brought against Defendant Nassar, among others.

53. Drew, Cooper & Anding, P.C. is a Michigan law firm based in Grand Rapids, Michigan.

54. White Law PLLC is a Michigan law firm based in Okemos, Michigan.

55. Manly, Stewart & Finaldi, P.C. is a California law firm based in Irvine, California.

56. Collectively, these three law firms (hereinafter the "Law Firm Plaintiffs") represent approximately 80 victims of sexual assault by Nassar.[22]

57. The remaining Plaintiffs[23] are the victims themselves ("Plaintiff victims").

58. Judge Rosemarie E. Aquilina is the presiding judge in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC, and is the judge who issued the First Gag Order and the Second Gag Order.

59. The Ingham County Circuit Court sits in Ingham County, Michigan, and Judge Aquilina carries out her official duties as an Ingham County Circuit Court Judge in Ingham County, Michigan.

60. Judge Aquilina is not entitled to judicial immunity since Plaintiffs are seeking only declaratory and prospective injunctive relief.[24]

---

[22] The number of victims is approximate because each firm continues to receive calls as more victims come forward.

[23] Identified as Jane Does in 1:17-cv-000029, 1:17-cv-000257. Some Jane Does have yet to be added to the previously listed federal cases. Other Jane Does have yet to file suit in other jurisdictions.

[24] *Pulliam v. Allen*, 466 U.S. 522, 541-43 (1984).

61.     Nassar is the named criminal defendant in *People v. Nassar*, 17-143-FC.

62.     Upon information and belief, Nassar is currently in the custody of the U.S. Marshals in the Western District of Michigan. Prior to being taken into custody, Nassar was a resident of Holt, an unincorporated community within Delhi Charter Township, Ingham County, Michigan.

63.     Nassar was acting under color of state law when he used the Michigan judicial process to deprive Plaintiffs of their First Amendment rights without due process.[25]

64.     Defendant Judge Aquilina acted under color of state law as an Ingham County Circuit Court Judge when issuing the Second Gag Order to deprive Plaintiffs of their First Amendment rights without due process.

65.     Plaintiffs believe that Defendant Nassar and/or Defendant Judge Aquilina will seek to hold them in contempt for any alleged violations of the Second Gag Order.

66.     Plaintiffs truthfully believe, based on statements of Defendant Nassar's Counsel and the Court at the hearing on Nassar's Motion and based upon introductory comments to the Second Gag Order, that the Court will enforce the Second Gag Order to its fullest extent if informed of a violation, including holding Plaintiffs and others in contempt.

## IV.     GENERAL ALLEGATIONS

67.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

68.     The First and Fourteenth Amendments to the United States Constitution establish

---

[25] *See, e.g.*, *Shelley v. Kraemer*, 334 U.S. 1, 22-23 (1948).

Plaintiffs' rights to freedom of speech, freedom of the press, and freedom of expression.[26]

69. The Second Gag Order (much like the First Gag Order) is an impermissible prior restraint on free speech.

70. Although the Court attempted to address "mistaken statements and beliefs about the intent of the Original Order,"[27] the Second Gag Order also contains paragraphs and provisions which are unconstitutionally vague and overbroad.

71. The Second Gag Order purports to apply to "Covered Individuals" including, but not limited to:

> c. An individual who has been (i) named in a court filing as a witness in the Criminal Case and (ii) served with a copy of this Order, with service established through a proof of service filed in the Criminal Case, or d. An attorney who represents a witness as described in Paragraph 2(c) of this order (and any member or employee of that attorney's law firm).[28]

72. Virtually all of the Plaintiff victims and indeed nearly every other victim of Nassar will be deemed "Covered Individuals" in each of Nassar's Michigan state court criminal cases pursuant to MCL 768.27a(1), which allows the prosecutor to introduce evidence that Nassar committed other acts of sexual assault against minors for any matter that is relevant, including propensity purposes.[29]

73. Nassar is criminally charged in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC of committing a listed offense against a minor—namely criminal sexual

---

[26] *See* U.S. CONST. amends. I, XIV; *Gitlow v. New York*, 268 U.S. 652 (1925); *Near v. Minnesota*, 283 U.S. 697 (1931); *NAACP v. Alabama*, 357 U.S. 449 (1958); *Roberts v. United States Jaycees*, 468 U.S. 609 (1984).

[27] Exhibit 3.

[28] *Id.*, at ¶¶ 2.c., 2.d.

[29] MCL 768.27a(1) states in relevant part, "[I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." *See also People v. Watkins*, 491 Mich. 450 (2012).

conduct in the first degree with a person under the age of 13, contrary to MCL 750.520b(1)(a).

74. The Plaintiff victims have largely alleged that Nassar digitally penetrated their vaginas, and, in some cases, their anuses, without the use of gloves and without their consent under the guise of medical treatment.[30]

75. The vast majority of Plaintiff victims were minors at the time of these assaults.

76. As a result, these assaults qualify as "listed offenses" pursuant to MCL 768.27a(1), as the allegations support conduct that would be criminally actionable as criminal sexual conduct in the first degree, contrary to MCL 750.520b(1)(b)(iii), or criminal sexual conduct in the third degree, contrary to MCL 750.520d(1)(a).[31]

77. The Second Gag Order's attempts to limit the First Gag Order's scope and clarify vague provisions, however the Second Gag Order fails to do so and is impermissibly overbroad and vague from a First Amendment standpoint because it permits Defendant Nassar to essentially silence every victim by naming them as a witness in order to qualify them as a Covered Individual under the Second Gag Order.

78. The Second Gag Order states "no Covered Individual may publicly share information relating to [*People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC], other than information available in a public court file."

79. Neither the Law Firm Plaintiffs nor the Plaintiff victims have any personal information regarding the specific criminal allegations of the complaining witness in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.

---

[30] *See*, 1:17-cv-000029, PageID.3372-3428 and 1:17-cv-000257 PageID.1-42.
[31] Both first and third degree criminal sexual conduct in Michigan are "listed offenses" under the sex offenders registration act. MCL 28.722(j), (w)(iv).

80.     If the Plaintiff victims are named as witnesses pursuant to MCL 768.27a, their personal experiences of sexual assault by Defendant Nassar would fall within the scope of the Second Gag Order because their testimony regarding their personal experiences would be substantively offered as evidence to assist in proving Defendant Nassar's guilt on his criminal charges by showing that Defendant Nassar has a propensity to sexually assault minors.

81.     The Plaintiff victims' personal experiences form the basis for their civil cases and some of the other criminal cases pending against Defendant Nassar.

82.     The Second Gag Order also states, "Nothing in this order shall be interpreted as prohibiting a Covered Individual from discussing civil or criminal claims against Nassar other than the specific claims at issue in the Criminal Case."[32]

83.     However, if the Plaintiff victims testify regarding their personal experiences with Defendant Nassar in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC, their testimony inevitably becomes a part of that case.

84.     Consequently, Plaintiffs will ultimately be precluded from discussing their civil or criminal claims against Defendant Nassar, although Paragraph 14 of the Second Gag Order appears to permit them to do so.

85.     To date, no witness lists have been filed in any of Nassar's state court criminal proceedings.

86.     It is unknown whether the parties in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC have exchanged preliminary witness lists containing any or all of Plaintiffs' names.

87.     At a minimum however, it is Plaintiffs understanding that Plaintiffs Denhollander, Lemke,

---

[32] Exhibit 3, at ¶14.

and certain attorneys of the Law Firm Plaintiffs, including but not limited to Attorney White, will be named as witnesses in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.

88. Although the Second Gag Order contains a provision that seems to create an exception to permit free speech,[33] when read with other paragraphs, the vagueness and overbreadth of the Second Gag Order is evident.

89. The Second Gag Order uses the phrases "information relating to the Criminal Case" and "specific claims at issue in the Criminal Case."[34]

90. However, if any or all of the Plaintiffs are named and called as witnesses, their testimony will undoubtedly become "information relating to the [*People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC]."

91. The Second Gag Order is vague and confusing with respect to whether discussion regarding their experiences with Nassar and their civil and criminal cases against Defendant Nassar constitutes "information relating to the [*People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC]."

92. Moreover, it is unclear how it would be possible for Plaintiffs to determine what information specifically relates to "the Criminal Case" because the preliminary examination transcript and a number of the other documents containing information about the specific allegations involved in that matter have been sealed to the public.

93. Additionally, while the Second Gag Order seems to provide exceptions for Covered Individuals to make "any statement" to "law-enforcement agencies, medical personnel,

---

[33] *Id*. at ¶14.
[34] *Id*. at ¶¶6, 14, and 15.

therapists, attorneys, government agents, or similar parties," the list seems to prohibit Covered Individuals from making "any statement" to individuals who are non-similar parties including but not limited to family, friends, support groups, and others.

94.   Further, Paragraph 17 of the Second Gag Order imposes an indefinite effective time limit as it states the Second Gag Order is to remain in effect until *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC has ended and "all direct appeal have concluded."

95.   It is impossible to determine how long the Second Gag Order could be in effect.

96.   Plaintiffs suffered deprivation of their Constitutional rights by virtue of the entry of the First Gag Order.

97.   Plaintiffs have suffered and continue to suffer deprivation of their Constitutional rights by virtue of the existence and entry of the Second Gag Order.

98.   As was the situation with the First Gag Order, following the entry of the Second Gag Order, the Law Firm Plaintiffs have received telephone calls from a number of the Plaintiff victims, and other victims who have not yet pursued criminal or civil prosecution, who are concerned they will named as witnesses and be thrown in jail or otherwise punished if they come forward publicly after being named as witnesses.

99.   This type of chilling effect and prior restraint comes "with a heavy presumption against constitutional validity" and is "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stewart*, 427 U.S. 539, 558-59 (1976).

100.   Furthermore, the Second Gag Order creates a de facto requirement for any named witness who wishes to exercise his or her First Amendment rights to first engage the services of an

attorney to file an objection and legal brief.[35]

101. No citizen of the United States should be required to engage the services of an attorney to exercise his or her basic, fundamental constitutional rights.[36]

102. While most of the Plaintiff victims have chosen to proceed anonymously under pseudonyms due to the incredibly personal nature of their injuries, some have decided to come forward publicly as a means of engaging the political process to advocate for changes to the laws, policies, and procedures that allowed their abuse to occur and to attempt to put an end to child sexual abuse.

103. Plaintiff Denhollander has decided not to proceed anonymously and has shared her previous experiences with Defendant Nassar with third parties including law enforcement, the Plaintiff Law Firms, the media, and others as an exercise of her First Amendment rights of free speech and expression.

104. Plaintiff Denhollander desires to continue to exercise her First Amendment rights.

105. Upon information and belief, Plaintiff Denhollander believes she will be named as a witness by Defendant Nassar in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.

106. Plaintiff Denhollander believes she will be subject to a contempt order by Defendants if she continues to exercise her First Amendment rights after being named a witness.

107. Plaintiff Lemke has decided not to proceed anonymously and has shared her previous experiences with Defendant Nassar with third parties including law enforcement, the

---

[35] Exhibit 3 at ¶ 4.
[36] *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 324 (2010) ("The First Amendment does not permit laws that force speakers to retain a campaign finance attorney . . . before discussing the most salient political issues of our day.").

Plaintiff Law Firms, and the media, among others as an exercise of her First Amendment rights of free speech and expression.[37]

108.    After learning of the Temporary Restraining Order, Plaintiff Lemke felt relieved to know she could serve as an advocate for sexual assault awareness without fear of being fined or jailed.[38]

109.    Plaintiff Lemke upon learning of the Second Gag Order is afraid to speak publicly and is afraid that if statements and recordings which made prior to issuance of the First or Second Gag Order are now made public, she may be fined or jailed due to the existence and entry of the Second Gag Order.[39]

110.    Plaintiff Lemke desires to continue to exercise her First Amendment rights.[40]

111.    Plaintiff Lemke believes she will be subject to a contempt order by Defendants if she continues to exercise her First Amendment rights after being named a witness.[41]

112.    The underlying subject matter of the Plaintiff victims' lawsuits is of such public importance that Plaintiff Dantzscher testified on March 28, 2017, before the Senate Judiciary Committee, in support of a bill co-sponsored by seventeen Senators, including Ranking Member Dianne Feinstein, requiring mandatory reporting of suspicions of child abuse by federal sports organizations.[42]

113.    It is possible Plaintiff Dantzscher will be asked to testify again.

114.    Plaintiff Dantzscher also desires to continue to exercise her First Amendment rights.

---

[37] Exhibit 4, Affidavit of Lindsey Lemke, April 13, 2017, at ¶11.
[38] *Id*. at ¶9, 12, 13.
[39] *Id*. at ¶14-17.
[40] PageID.109-11; *See also*, Exhibit 4 at ¶17.
[41] *Id*.
[42] *Protecting Youth Athletes from Abuse: Hearing on S. 534 Before the S. Comm. On the Judiciary*, 115th (2017-2018). *See also,* PageID.113-121.

115.   Upon information and belief, Plaintiff Dantzscher believes she will be named as a witness by Defendant Nassar in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.

116.   Plaintiff Dantzscher believes she will be subject to contempt orders by the Defendants if she continues to exercise her First Amendment rights.

117.   Plaintiff Dantzscher believes she will be subject to contempt orders by the Defendants if she testifies before Congress again.

118.   Individual attorneys of the Law Firm Plaintiffs believe they will be named as witnesses for Defendant Nassar in in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.[43]

119.   Attorney H. James White of Plaintiff White Law PLLC believes he and other Plaintiffs (including Plaintiff victims and their attorneys) will be named as witnesses by Defendant Nassar in *People v. Nassar,* Ingham County Circuit Court Case No. 17-143-FC.[44]

120.   The Law Firm Plaintiffs believe they will be subject to contempt orders by the Defendants if they continue to exercise their First Amendment rights after being named as witnesses.

121.   These noble causes strike at the very core of the speech that is entitled to the greatest degree of First Amendment protection—political speech.[45]

122.   To limit Covered Individuals to only provide "direct quotations (without elaboration) from publicly available document" and to require that they "must identify the document quoted" makes a mockery of the First Amendment by essentially turning Plaintiffs—particularly

---

[43] *See*, PageID.34, fn.3 ("Further, the defense definitely intends to call lawyer[ ] …. Jamie White at trial.").
[44] Exhibit 5, Affidavit of H. James White, April 14, 2017, at ¶6.
[45] "[P]olitical speech must prevail against laws that would suppress it, whether by design or inadvertence." *Citizens United*, 558 U.S. at 340.

the Plaintiff victims—into mindless automatons who can only speak through formal legal pleadings, filings, and recitations of transcripts.[46]

123.   Plaintiffs—particularly Plaintiff victims—by entry of the Second Gag Order have once again had the entire content and substance of their speech dictated for them.

124.   The Second Gag Order is not sufficiently narrowly tailored nor is it the least restrictive means to protect Nassar's constitutional rights.[47]

125.   Moreover, the manner in which the Second Gag Order was entered was once again repugnant to the due process clauses of the Fifth and Fourteenth Amendments in failing to provide Plaintiffs with notice and an opportunity to be heard prior to entry of the Second Gag Order.[48]

126.   The existence of the Second Gag Order is unconstitutional, the Second Gag Order is unconstitutional on its face for vagueness and overbreadth, and its manner of entry was contrary to notions of procedural due process.

## V.   CAUSES OF ACTION

### A.   COUNT ONE

**DEPRIVATION OF FIRST AMENDMENT RIGHTS**
**42 U.S.C. § 1983**
**ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

127.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding

---

[46] Exhibit 3, at ¶7.

[47] For instance, Defendants have not considered a change of trial venue, contemplated the effectiveness of thorough voir dire of potential jurors, or considered the feasibility of emphatic and clear jury instructions. *See Nebraska Press Ass'n*, 427 U.S. at 563-64.

[48] "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they required that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); U.S. CONST. amends. V, XIV.

paragraphs.

128.    By enforcing or threatening to enforce the Second Gag Order, Defendants acting under color of state law, deprived Plaintiffs of their First Amendment rights to freedom of speech and expression.

129.    By enforcing or threatening to enforce the Second Gag Order, Defendants acting under color of state law, deprived Plaintiffs of their First Amendment rights to freedom of speech and expression.

130.    Orders which restrict or preclude a citizen from speaking in advance are known as prior restraints.

131.    The loss of First Amendment freedoms, for even minimal periods of time constitutes irreparable harm.[49]

132.    Each passing day of a prior restraint on speech may constitute separate and cognizable infringement of the First Amendment.[50]

133.    An actual controversy exists between the parties, and Plaintiffs have and will continue to suffer irreparable harm by virtue of the entry and existence of the Second Gag Order because it functions as a prior restraint on speech that is protected by the First Amendment.

134.    The Second Gag Order is unconstitutionally vague and overbroad as it can and arguably will be construed in a manner which makes Plaintiffs' statements regarding their personal experiences with Defendant Nassar and statements regarding their civil and criminal cases "information relating to the [*People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC]" under the Second Gag Order.

---

[49] *See Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976).
[50] *Nebraska Press Assn.*, 423 U.S. 1327, 1329, 96 S.Ct. 251, 254 (1975).

135. The Second Gag Order is also unconstitutionally vague, as it is indefinite in its term of duration.[51]

136. The Second Gag Order is overbroad as it prohibits Plaintiffs who are "Covered Individuals" from making "any statement" to individuals who are not similar to law-enforcement agencies, medical personnel, therapists, attorneys, and government agencies such as family, friends, and support groups.

137. The Second Gag Order is also overbroad because it would also prohibit any witness—regardless of whether they are a victim or attorney for a victim—from making any public statement to any individual not specifically indicated in the Second Gag Order.

138. Defendant Nassar in his Brief supporting the First Gag Order indicated "there are more than 100 potential complainants against Nassar and some may be necessary 404b witnesses."[52]

139. It is believed the Law Firm Plaintiffs represent some of the individuals included amongst the 100 potential complainants.

140. Defendant Nassar also indicated in his Brief that he intends to call Attorney White as a witness even though Attorney White represents no individuals involved with nor has any personal knowledge of facts implicated in *People v. Nassar*, Ingham County Circuit Court Case No. 17-143-FC.[53]

141. Plaintiffs Denhollander, Lemke, and Dantzscher have exercised their First Amendment rights of freedom of speech and expression by publicly sharing information with third parties including law enforcement, the Senate Judiciary Committee, the media, and the

---

[51] *See Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S.Ct. 349 (1972).
[52] 1:17-cv-305, Page ID.34, fn. 1.
[53] *Id.*

Law Firm Plaintiffs regarding allegations of their past experiences with Defendant Nassar.[54]

142.   Dozens of Plaintiffs have exercised their First Amendment rights of freedom of speech and expression and shared information regarding their past experiences with Defendant Nassar by making criminal complaints with law enforcement agencies.

143.   Many Plaintiffs have exercised their First Amendment rights of freedom of speech and expression by sharing information with medical professionals, other potential victims of sexual abuse, family, and close friends regarding the emotional and mental distress they have experienced as a result of the allegations contained in their Complaints.

144.   Additionally, the Law Firm Plaintiffs, on behalf of their clients, have exercised their First Amendment rights of freedom of speech and expression by responding to media requests regarding the lawsuits.

145.   Plaintiffs desire to continue to exercise their First Amendment rights to free speech and expression.[55]

146.   At a minimum, Paragraphs 2.c., 2.d., 5, 6, 7, 14, 15, and 17, when read together, could be construed as limiting Plaintiffs' ability to exercise their First Amendment rights to free speech and expression.

147.   Gag orders directed at trial participants must be narrowly tailored to specifically limit or prevent only the disclosure of particularly prejudicial evidence or conduct.

148.   The Second Gag Order is not narrowly tailored as it fails to prevent only the disclosure of particularly prejudicial evidence or conduct and instead prohibits "Covered Individuals"

---

[54] Plaintiffs incorporate by reference Dkt 3, 3-1, 4, and 4-1 through 4-9.
[55] *Id.*

from making "any statement"[56] to individuals who are not similar parties to "law-enforcement agencies, medical personnel, therapists, attorneys, government agents."[57]

149.   Plaintiffs have reason to believe they will be "Covered Individuals" under the Second Gag Order as Defendant Nassar, through Counsel, has indicated he intends to name Plaintiffs as witnesses.[58]

150.   However, even if Plaintiffs become "Covered Individuals" they will have no way to determine whether they will actually be called as witnesses to testify until the time of trial.

151.   As a result, the Second Gag Order gives Defendant Nassar the power and an incentive to list each and every Plaintiff as a witness to subject them to the terms of the Second Gag Order.

152.   Plaintiffs have legitimate concerns that their ability to continue to exercise First Amendment rights of freedom of speech and expression as described above is impaired by the Second Gag Order.

153.   Moreover, the Second Gag Order functions as a prior restraint by its very terms because it will restrict speech without notice and an opportunity to be heard as soon as the witness is named on a witness list and served with a copy of the Second Gag Order.

154.   A "Covered Individual" must file an objection and legal brief just to secure the opportunity to argue in support of his or her First Amendment rights.

155.   A proper gag order should be explicit as to which conduct is allowed and which conduct is proscribed.

156.   The Second Gag Order uses language and phrases which make it difficult to determine

---

[56] Exhibit 3, at ¶ 15.
[57] *Id*.
[58] Exhibit 5, at ¶7.

which conduct is allowed and which conduct is proscribed.

157. The scope of the Second Gag Order is unclear, vague, and overbroad, constituting an unconstitutional prior restraint on Plaintiffs' First Amendment freedoms.

158. A prior restraint cannot be upheld if reasonable alternatives are available having lesser impact on First Amendment freedoms.

159. The Court did not engage in analysis or make any findings of fact regarding whether there were disclosures of conduct that were particularly prejudicial rising to the level of a serious and imminent threat to Defendant Nassar's competing protected interest prior to entry of the Second Gag Order.

160. The Court also did not engage in analysis or make any findings of fact of whether there were alternatives with lesser impact on Plaintiffs' First Amendment freedoms prior to entry of the Second Gag Order.

161. As a direct and/or proximate cause of Defendants' actions in seeking, obtaining, enforcing, or threatening to enforce the Second Gag Order, Plaintiffs have suffered and continue to suffer irreparable harm to their First and Fourteenth Amendment rights to freedom of speech, press, and expression.

## B.    COUNT TWO

### DEPRIVATION OF DUE PROCESS RIGHTS
### 42 U.S.C. § 1983
### ALL PLAINTIFFS AGAINST ALL DEFENDANTS

162. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

163. The Due Process Clauses of the Fifth and Fourteenth Amendments guarantee Plaintiffs, at a minimum, the right to notice and an opportunity to be heard before deprivation of their

liberty, including their First and Fourteenth Amendment rights to freedom of speech, press, and expression.

164.    By seeking to obtain and issuing the First Gag Order and the Second Gag Order without providing Plaintiffs notice and an opportunity to be heard, Defendants acting under color of state law have deprived and will continue to deprive Plaintiffs of due process of law.

165.    An actual controversy exists between the parties, and Plaintiffs have suffered and continue to suffer irreparable harm by virtue of the entry and existence of the Second Gag Order because it deprives Plaintiffs of constitutional rights without due process of law.

166.    A prior restraint issued prior to a full and fair hearing faces an even heavier presumption of invalidity.[59]

167.    In addition to guaranteeing a third-party's due process rights, giving notice and a hearing increases the likelihood that any impingement on First Amendment rights that might follow will be well-founded.

168.    Defendants did not schedule a hearing on the motion to allow those who may be affected by the First Gag Order or the Second Gag Order to appear before the Court and be heard, including Plaintiffs.

169.    Defendants did not fully consider the effect the First Gag Order or the Second Gag order could have on the First Amendment rights of Plaintiffs, other victims, or the press.

---

[59] *See*, *In re Providence Journal Co.*, 820 F.2d 1342 *modified on reh'g by* 820 F.2d 1354, 1351 (1st Cir. 1986), *cert. granted and dismissed on other* grounds. In *Providence Journal*, the district court issued a temporary restraining order prohibiting a newspaper from publishing certain information in its possession and scheduled a hearing for several days later. The First Circuit found that the TRO constituted an unconstitutional prior restraint on pure speech. The court acknowledged the matter had come before the district court "on an emergency basis" but concluded absent the most compelling circumstances, because the approach resulted in a prior restraint on pure speech by the press it was impermissible and unconstitutional.

170.   At a minimum, the Second Gag Order by its very terms operates as an unconstitutional prior restraint on free speech because each and every person who becomes a "Covered Individual" will be "gagged" without prior notice and an opportunity to be heard in violation of due process.

171.   The Second Gag Order's mechanism for challenging its scope and coverage places a burden on the "Covered Individual" to actively fight to reinstate his or her First and Fourteenth Amendment rights.

172.   Guidance from the Michigan Criminal Proceedings Benchbook[60] suggests a court should use MCR 8.116(D)(1) when assessing whether to grant a gag order prohibiting discussion of a case with reporters which requires a Court to identify a specific interest to be protected, narrowly tailor the denial of access, and to state on the record the specific reasons for the court's decision to limit access to the proceeding.

173.   In issuing the First Gag Order, Defendants identified -- in very general terms -- Defendant Nassar's Sixth Amendment right to a fair trial as an interest justifying the Order.

174.   In issuing the Second Gag Order, Defendant Judge Aquilina in introductory remarks again identified Defendant Nassar's Sixth Amendment right to a fair trial as an interest justifying the Order.[61]

175.   At no time prior to entry of the First Gag Order or Second Gag Order has the Court identified Plaintiffs' (or others') First, Fifth, or Fourteenth Amendment rights as equally important interests worth protecting.

---

[60] Criminal Proceedings Benchbook, Volume 1, Section 1.1, Page 1-3, "C. Gag Orders." Available at, https://mjieducation.mi.gov/documents/benchbooks/20-crimv2/file. Last accessed, March 29, 2017.

[61] *See*, the introductory remarks of Exhibit 3, at p. 1.

176.   Prior to issuing both the First Gag Order and the Second Gag Order, Defendant Judge Aquilina did not engage in any extensive analysis regarding whether there is a "reasonable likelihood" that pretrial publicity will prejudice a fair trial for Defendant Nassar.

177.   The Court did not make any findings of fact or conclusions of law indicating a "reasonable likelihood" that Defendant Nassar's right to a fair trial would be prejudiced absent entry of the First Gag Order or the Second Gag Order.

178.   The Court did not explore whether other available remedies would effectively mitigate any prejudicial pretrial publicity alleged by Defendant Nassar such as postponement of trial, a focus on the issue during voir dire, special jury instructions, or jury sequestration before issuing the First Gag Order or the Second Gag Order.

179.   Although the Court added some language to the First Gag Order during the hearing, the additional language failed to sufficiently narrowly tailor the First Gag Order leaving it vague and overbroad.

180.   The Second Gag Order also made attempts to address some of Plaintiffs concerns, however, the additional language did not fully cure the issues with overbreadth and vagueness.

181.   As Plaintiffs received no notice of the hearing regarding the First Gag Order and the hearing did not comport with MCR 8.116(D)(1), Plaintiffs Fifth and Fourteenth Amendment procedural due process rights were violated.

182.   There was no hearing held prior to entry of the Second Gag Order, and Plaintiffs were not provided with notice of its entry prior to April 12, 2017.

183.   As a direct and/or proximate cause of Defendants' actions in seeking, obtaining, enforcing, or threatening to enforce the First Gag Order and the Second Gag Order, Plaintiffs have suffered and continue to suffer irreparable harm to their First and Fourteenth Amendment

rights to freedom of speech, press, and expression.

## VI.  RELIEF REQUESTED

184. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

185. The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiffs' Constitutional and Federal rights, and the United States District Court has jurisdiction to hear and adjudicate said claims.

186. In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiffs have and continue to suffer irreparable harm as a result of the violations.

**WHEREFORE**, Plaintiffs request that this Court enter a Judgment in Plaintiffs' favor against all named Defendants on all counts and claims as indicated above and award Plaintiffs the following relief:

a) A declaration of Plaintiffs' rights holding that both the First Gag Order and Second Gag Order are unenforceable as an unconstitutional prior restraint of Plaintiffs' First and Fourteenth Amendment freedoms of free speech and expression;

b) A declaration of Plaintiffs' rights holding that the First Gag Order and Second Gag Order were entered in a manner which violated Plaintiffs' Fifth and Fourteenth Amendment procedural due process rights;

c) An injunction to enjoin to Defendants from enforcing the Second Gag Order; and,

d) Plaintiffs' interests, costs, and attorney fees pursuant to 42 U.S.C. § 1988.

Respectfully submitted,


Dated: April 17, 2017                 By:     /s/ Stephen R. Drew
                                              Stephen R. Drew (P24323)
                                              Adam C. Sturdivant (P72285)
                                              DREW, COOPER & ANDING
                                              Attorneys for Plaintiffs
                                              80 Ottawa Avenue NW, Suite 200
                                              Grand Rapids, Michigan 49503
                                              Ph: (616) 454-8300
                                              E: sdrew@dca-lawyers.com
                                              E: asturdivant@dca-lawyers.com


Dated: April 17, 2017                 By:     /s/ James White
                                              James White (P56946)
                                              John W. Fraser (P79908)
                                              Alexander S. Rusek (P77581)
                                              WHITE LAW PLLC
                                              Attorneys for Plaintiffs
                                              2549 Jolly Road, Suite 340
                                              Okemos, Michigan 48864
                                              Ph: (517) 316-1195
                                              E: jameswhite@whitelawpllc.com
                                              E: johnfraser@whitelawpllc.com
                                              E: alexrusek@whitelawpllc.com


Dated: April 17, 2017                 By:     /s/ John C. Manly
                                              John C. Manly (CA 149080)
                                              Vince W. Finaldi (CA 238279)
                                              Alex E. Cunny (CA 291567)
                                              Manly, Stewart & Finaldi
                                              Attorneys for Plaintiffs
                                              19100 Von Karman Avenue, Suite 800
                                              Irvine, CA 92612
                                              Ph.: (949) 252-9990
                                              E: jmanly@manlystewart.com
                                              E: vfinaldi@manlystewart.com
                                              E: acunny@manlystewart.com

## <u>INDEX OF EXHIBITS</u>

<u>**Exhibit**</u>                                                                                          <u>**Description**</u>

1.............................................................................................................. E-mail, April 12, 2017

2..................................................................Certified Copy of Register of Actions, April 13, 2017

3............................. Certified Copy of Order Limiting Public Disclosures by Covered Individuals
April 12, 2017

4...................................................................... Affidavit of Lindsey Lemke, April 13, 2017

5..................................................................Affidavit of H. James White, April 14, 2017

*Denhollander, et al. v. Aquilina, et al.*

*Case No. 17-cv-305*

# EXHIBIT 1

### TO PLAINTIFFS' FIRST AMENDED COMPLAINT

| | |
|---|---|
| **From:** | Hayes, Allison <ahayes@ingham.org> |
| **Sent:** | Wednesday, April 12, 2017 1:59 PM |
| **To:** | John Fraser; Matt Newburg; shannon@shannonsmithlaw.com; Povilaitis, Angela (AG); Liddell, Robyn (AG); Robika Garner; Vince Finaldi; Alex Cunny; Jamie White; Alex Rusek; BDalton@bdaltonlaw.com; SBrinton@bdaltonlaw.com; Steve Drew; Adam Sturdivant; Shannon Smith; John Manly; trent.collier@ceflawyers.com; Brian.Einhorn@ceflawyers.com |
| **Cc:** | Aquilina, Hon. Rosemarie; Foucrier, Stephen; Hamlin, Jean Ann; Dunnings, Shauna |
| **Subject:** | People v Nassar (17-143-FC) |
| **Attachments:** | People v Nassar.pdf |

Dear All,

Attached please find an Order Limiting Public Disclosure that was just entered in the above matter.  As there is a large volume of recipients in this matter, please feel free to forward this to anyone that I might have missed.

Thank you,

**Allison Hayes**
**Judicial Assistant to Judge Rosemarie E. Aquilina**
**30th Judicial Circuit Court**
**313 W. Kalamazoo Street**
**Lansing Michigan, 48933**
**Tel: 517-483-6526**
**Fax: 517-483-6536**

*Denhollander, et al. v. Aquilina, et al.*

*Case No. 17-cv-305*

# EXHIBIT 2

**TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

```
Date: 04/13/17                                                         MIJR5925
```

```
Judge: AQUILINA, ROSEMARIE E.                Case No.     17-000143-FC-C30
                                             Ticket No.
                                             CTN:

THE STATE OF MICHIGAN                        By:
                              -vs-
NASSAR, LAWRENCE G        DFNDT               By: NEWBURG, MATTHEW R
2255 TIFFANY LANE                                316 TAYLOR ST
HOLT, MI 48842                                   GRAND LEDGE, MI 48837

                                                SMITH, SHANNON M
                                                1668 S TELEGRAPH RD
                                                STE 140
                                                BLOOMFIELD HILLS, MI 48302

Dob: 08/16/1963          Sex: M
Lic:                     Sid: 5369012X

Plate#:
Make:
Year:             Accident: No
Type:
Venue:
Location: ING

                                    Bond:              Set:
POVILAITIS, ANGELA M      AGATTY    Type: CR DENIED    Posted:

Charges:
```

| Ct.1 | 750.520B1A | CRIMINAL SEXUAL CONDUCT - FIRST DEGREE (Person Under Thirteen) |
| --- | --- | --- |
| | Offense Dt: 07/01/1998    Cvr: | |
| | Arrest Dt: 07/01/1998 | |
| | Comments: | |

| Ct.2 | 750.520B1A | CRIMINAL SEXUAL CONDUCT - FIRST DEGREE (Person Under Thirteen) |
| --- | --- | --- |
| | Offense Dt: 07/01/1998    Cvr: | |
| | Arrest Dt: 07/01/1998 | |
| | Comments: | |

| Ct.3 | 750.520B1A | CRIMINAL SEXUAL CONDUCT - FIRST DEGREE (Person Under Thirteen) |
| --- | --- | --- |
| | Offense Dt: 07/01/1998    Cvr: | |
| | Arrest Dt: 07/01/1998 | |
| | Comments: | |

```
Sentencing:
```

| No. | Filed | Action | Operator | Fine/Cost | Due |
| --- | --- | --- | --- | --- | --- |
| 1 | 04/12/17 | ORDER LIMITING PUBLIC DISCLOSURES BY COVERED INDIVIDUALS | KPELLMAN | 0.00 | 0.00 |
| 2 | 04/06/17 | REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 05/15/2017 @ 9:00 A.M. - WILX | KPELLMAN | 0.00 | 0.00 |
| 3 | 04/03/17 | TRANSCRIPT OF PROCEEDINGS - EMERGENCY MOTION TO LIMIT PUBLIC DISCLOSURE HELD ON 03/29/2017 BEFORE THE HONORABLE ROSEMARIE E. AQUILINA | KPELLMAN | 0.00 | 0.00 |
| 4 | 04/03/17 | HEARING SET: Event: JURY TRIAL CRIMINAL Date: 05/15/2017    Time: 9:00 am Judge: AQUILINA, ROSEMARIE E. Location: COURTROOM 5 - VETERANS MEMORIAL | BHOWARD | 0.00 | 0.00 |
| 5 | 03/29/17 | ORDER REGARDING PUBLIC DISCLOSURE | KPELLMAN | 0.00 | 0.00 |
| 6 | 03/29/17 | HEARING IN OPEN COURT - DEFENDANT'S MOTION TO LIMIT PUBLIC DISCLOSURE GRANTED; ORDER SIGNED IN OPEN COURT | KPELLMAN | 0.00 | 0.00 |

| No. | Filed | Action | Operator | Fine/Cost | Due |
|-----|-------|--------|----------|-----------|-----|
| 7 | 03/29/17 | GRANTED ON THE RECORD<br>The following event: MOTION (MISC) scheduled for 03/29/2017 at 9:00 am has been resulted as follows:<br><br>Result: GRANTED<br>Judge: AQUILINA, ROSEMARIE E.<br>  Location: COURTROOM 5 - VETERANS MEMORIAL<br>Result Staff:<br>  Staff: COURT REPORTER: HAMLIN, JEAN ANN<br>Certification Number: 3218 | ATIMMER | 0.00 | 0.00 |
| 8 | 03/29/17 | C30 HEARING HELD ON THE RECORD<br>The following event: CRIMINAL PRETRIAL CONFERENCE scheduled for 03/29/2017 at 8:30 am has been resulted as follows:<br><br>Result: HEARING HELD ON THE RECORD<br>Judge: AQUILINA, ROSEMARIE E.<br>  Location: COURTROOM 5 - VETERANS MEMORIAL<br>Result Staff:<br>  Staff: COURT REPORTER: HAMLIN, JEAN ANN<br>Certification Number: 3218 | ATIMMER | 0.00 | 0.00 |
| 9 | 03/29/17 | CERTIFICATE OF SERVICE - WLNS TV6 - REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA SERVED PERSONALLY ON THE PARTIES OR THEIR ATTORNEYS FOR HEARING HELD ON 03/29/2017 @ 8:30 A.M. | KPELLMAN | 0.00 | 0.00 |
| 10 | 03/29/17 | CERTIFICATE OF SERVICE - WDIV - TV - REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA SERVED PERSONALLY ON THE PARTIES OR THEIR ATTORNEYS FOR HEARING HELD ON 03/29/2017 @ 8:30 A.M. | KPELLMAN | 0.00 | 0.00 |
| 11 | 03/29/17 | CERTIFICATE OF SERVICE - LANSING STATE JOURNAL - REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA SERVED PERSONALLY ON THE PARTIES OR THEIR ATTORNEYS FOR HEARING HELD ON 03/29/2017 @ 8:30 A.M. | KPELLMAN | 0.00 | 0.00 |
| 12 | 03/29/17 | CERTIFICATE OF SERVICE - WILX REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA SERVED PERSONALLY ON THE PARTIES OR THEIR ATTORNEYS FOR HEARING HELD ON 03/29/2017 @ 8:30 A.M. | KPELLMAN | 0.00 | 0.00 |
| 13 | 03/28/17 | REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 03/29/2017 @ 8:30 A.M. - WDIV - TV | KPELLMAN | 0.00 | 0.00 |
| 14 | 03/28/17 | PROOF OF SERVICE - COPY OF ORDER TO SEAL RECORDS SENT TO STATE COURT ADMINISTRATORS OFFICE AND CLERK OF THE SUPREME COURT ON 03/28/2017 VIA FIRST-CLASS MAIL | KPELLMAN | 0.00 | 0.00 |
| 15 | 03/27/17 | EMERGENCY MOTION TO LIMIT PUBLIC DISCLOSURE BY WITNESSES AND COUNSELING FOR WITNESSES; W/ BRIEF IN SUPPORT, POS, AND NOH FOR 03/29/2017 @ 8:30 A.M. BEFORE THE HONORABLE ROSEMARIE E. AQUILINA | KPELLMAN | 0.00 | 0.00 |

| No. | Filed | Action | Operator | Fine/Cost | Due |
|-----|-------|--------|----------|-----------|-----|
| 16 | 03/24/17 | HEARING SET:<br>Event: MOTION (MISC)<br>Date: 03/29/2017    Time:<br>9:00 am<br>Judge: AQUILINA, ROSEMARIE E.<br>  Location: COURTROOM 5 -<br>VETERANS MEMORIAL<br><br>Result: GRANTED | ATIMMER | 0.00 | 0.00 |
| 17 | 03/21/17 | ORDER TO SEAL RECORDS - IT IS<br>HEREBY ORDERED THE<br>PRELIMINARY EXAMINATION<br>TRANSCRIPT BE SEALED,<br>HOWEVER, ATTYS OF RECORD IN<br>THIS CASE SHALL BE ALLOWED TO<br>OBTAIN A COPY; ANY PLEADINGS<br>IDENTIFYING THE ALLEGED<br>VICTIM BY NAME WILL BE<br>SEALED; ANY PLEADINGS<br>CONTAINING ANY OTHER<br>IDENTIFYING INFO ON THE<br>ALLEGED VICTIM WILL BE<br>REDACTED AS TO HER ONLY,<br>EXCEPT AS TO THE COUNSEL OF<br>RECORD; IF COUNSEL FILES A<br>MOTION WITH FACTS THAT MAY<br>IDENTIFY THE ALLEGED VICTIM,<br>COUNSEL SHALL GIVE THE COURT<br>TWO COPIES SO THAT THE COURT<br>CAN REDACT THE COPY IN THE<br>PUBLIC FILE; ALLEGED VICTIM<br>WILL BE REFERRED TO AS<br>"VICTIM ZA" IN ALL FUTURE<br>PLEADINGS; APPROVED AS TO<br>FORM BY Attorney: LIDDELL,<br>ROBYN N (68287) AND Attorney:<br>SMITH, SHANNON M (68683) | KPELLMAN | 0.00 | 0.00 |
| 18 | 03/18/17 | ORDER ISSUING WRIT OF HABEAS<br>CORPUS TO THE UNITED STATES<br>MARSHALS SERVICE FOR<br>DEFENDANT, LAWRENCE NASSAR,<br>FOR A PRETRIAL CONFERENCE TO<br>BE HELD BEFORE THE HONORABLE<br>ROSEMARIE E. AQUILINA ON<br>03/29/2017 @ 8:30 A.M. | KPELLMAN | 0.00 | 0.00 |
| 19 | 03/16/17 | DEFENDANT'S RESPONSE TO<br>MOTION TO SEAL RECORDS; W/<br>POS ATTACHED<br>Attorney: SMITH, SHANNON M<br>(68683) | KPELLMAN | 0.00 | 0.00 |
| 20 | 03/16/17 | HEARING IN OPEN COURT ON<br>PEOPLE'S MOTION TO SEAL<br>RECORDS - MOTION GRANTED IN<br>PART / DENIED IN PART; ORDER<br>TO BE PREPARED BY AAG AND<br>SUBMITTED TO COURT BY<br>03/20/20 | KPELLMAN | 0.00 | 0.00 |
| 21 | 03/16/17 | C30 HEARING HELD ON THE RECORD<br>The following event: MOTION<br>(MISC) scheduled for<br>03/16/2017 at 2:30 pm has<br>been resulted as follows:<br><br>Result: HEARING HELD ON THE<br>RECORD<br>Judge: AQUILINA, ROSEMARIE E.<br>  Location: COURTROOM 5 -<br>VETERANS MEMORIAL<br>Result Staff:<br>  Staff: COURT REPORTER:<br>HAMLIN, JEAN ANN<br>Certification Number:  3218 | ATIMMER | 0.00 | 0.00 |
| 22 | 03/16/17 | PROOF OF SERVICE - COPY OF<br>REQUEST AND NOTICE FOR FILM<br>AND ELECTRONIC MEDIA COVERAGE<br>OF COURT PROCEEDINGS<br>PERSONALLY SERVED TO THE<br>PARTIES OR THEIR ATTORNEYS ON<br>03/16/2017 - LANSING STATE<br>JOURNAL | KPELLMAN | 0.00 | 0.00 |

Date: 04/13/...  1:17-cv-00305-JTN-ESC   ... A... ...s   ...
Case 1:17-cv-00305-JTN-ESC   ECF No. 21-2 filed 04/17/17   PageID.405   Page 41 of 54
MIJR5925

| No. | Filed | Action | Operator | Fine/Cost | Due |
|---|---|---|---|---|---|
| 23 | 03/16/17 | PROOF OF SERVICE - COPY OF REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS PERSONALLY SERVED TO THE PARTIES OR THEIR ATTORNEYS ON 03/16/2017 - WILX | KPELLMAN | 0.00 | 0.00 |
| 24 | 03/16/17 | PROOF OF SERVICE - COPY OF REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS PERSONALLY SERVED TO THE PARTIES OR THEIR ATTORNEYS ON 03/16/2017 - WLNS TV 6 | KPELLMAN | 0.00 | 0.00 |
| 25 | 03/15/17 | REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 03/16/2017 @ 2:30 P.M. - WILX | KPELLMAN | 0.00 | 0.00 |
| 26 | 03/15/17 | REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 03/29/2017 @ 8:30 A.M. - WLNS TV 6 | KPELLMAN | 0.00 | 0.00 |
| 27 | 03/15/17 | REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 03/16/2017 @ 2:30 P.M. - WLNS TV 6 | KPELLMAN | 0.00 | 0.00 |
| 28 | 03/15/17 | MOTION TO SEAL RECORDS W/ POS Attorney: POVILAITIS, ANGELA M (58430) Attorney: LIDDELL, ROBYN N (68287) | KPELLMAN | 0.00 | 0.00 |
| 29 | 03/14/17 | REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 03/16/2017 @ 2:30 P.M. - LANSING STATE JOURNAL | KPELLMAN | 0.00 | 0.00 |
| 30 | 03/13/17 | HEARING SET: Event: MOTION (MISC) Date: 03/16/2017   Time: 2:30 pm Judge: AQUILINA, ROSEMARIE E. Location: COURTROOM 5 - VETERANS MEMORIAL<br><br>Result: HEARING HELD ON THE RECORD | ATIMMER | 0.00 | 0.00 |
| 31 | 03/13/17 | STIPULATED ORDER LIMITING PUBLIC DISCLOSURE; STIPULATED BY Attorney: POVILAITIS, ANGELA M (58430) AND Attorney: NEWBURG, MATTHEW R (71692) | KPELLMAN | 0.00 | 0.00 |
| 32 | 03/07/17 | REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 03/29/2017 @ 8:30 A.M. - WILX | KPELLMAN | 0.00 | 0.00 |
| 33 | 03/07/17 | REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 03/29/2017 @ 8:30 A.M. - LANSING STATE JOURNAL | KPELLMAN | 0.00 | 0.00 |
| 34 | 03/07/17 | REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 03/22/2017 @ 8:30 A.M. - WILX | KPELLMAN | 0.00 | 0.00 |

| No. | Filed | Action | Operator | Fine/Cost | Due |
|-----|-------|--------|----------|-----------|-----|
| 35 | 03/07/17 | HEARING SET: | ATIMMER | 0.00 | 0.00 |
| | | The following event: CRIMINAL PRETRIAL CONFERENCE scheduled for 03/22/2017 at 8:30 am has been rescheduled as follows: | | | |
| | | Event: CRIMINAL PRETRIAL CONFERENCE Date: 03/29/2017 Time: 8:30 am Judge: AQUILINA, ROSEMARIE E. Location: COURTROOM 5 - VETERANS MEMORIAL | | | |
| | | Result: HEARING HELD ON THE RECORD | | | |
| 36 | 03/07/17 | HEARING ADJOURNED The following event: CRIMINAL PRETRIAL CONFERENCE scheduled for 03/22/2017 at 8:30 am has been resulted as follows: | ATIMMER | 0.00 | 0.00 |
| | | Result: C30 ADJOURNED Judge: AQUILINA, ROSEMARIE E. Location: COURTROOM 5 - VETERANS MEMORIAL Result Staff: Staff: COURT REPORTER: HAMLIN, JEAN ANN Certification Number: 3218 | | | |
| 37 | 03/03/17 | REQUEST AND NOTICE FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 03/22/2017 @ 8:30 A.M. - LANSING STATE JOURNAL | KPELLMAN | 0.00 | 0.00 |
| 38 | 03/01/17 | ORDER SETTING CRIMINAL PRETRIAL CONFERENCE FOR 03/22/2017 @ 8:30 A.M. BEFORE THE HONORABLE ROSEMARIE E. AQUILINA - DEF MUST BE PRESENT | KPELLMAN | 0.00 | 0.00 |
| 39 | 03/01/17 | HEARING SET: Event: CRIMINAL PRETRIAL CONFERENCE Date: 03/22/2017 Time: 8:30 am Judge: AQUILINA, ROSEMARIE E. Location: COURTROOM 5 - VETERANS MEMORIAL | ATIMMER | 0.00 | 0.00 |
| | | Result: C30 ADJOURNED | | | |
| 40 | 02/28/17 | FILED UNDER SEAL AS VOL 1A (PRELIMINARY HEARING TRANSCRIPT) | KPELLMAN | 0.00 | 0.00 |
| 41 | 02/27/17 | **ALERT ISSUED** CONDITIONAL BOND RELEASE issued on: 11/22/2016 For: NASSAR, LAWRENCE G Bond Amt: | WHIPPLE | 0.00 | 0.00 |
| 42 | 02/27/17 | CONDITIONAL BOND RELEASE ORDER - NOT USE ALCOHOL NOR ILLICITLY USE ANY CONTROLLED SUBSTANCE; NOT POSSESS OR PURCHASE A FIREARM OR OTHER DANGEROUS WEAPONS.MAY NOT BE UNSUPERVISED IN THE PRESENCE OF ANY PERSON UNDER 18; NO CONTACT WITH VICTIM ON THIS CASE; SURRENDER PASSPORT; GPS TETHER SO DEFT CAN NOT BE MORE THAN A 25 MILE RADIUS FROM HOME. | WHIPPLE | 0.00 | 0.00 |
| | | CR BOND EXPIRES 11/21/17 | | | |

Date: 04/13/...    ...13-2-... JUDICIAL ... A...    ...0...
MIJR5925

| No. | Filed | Action | Operator | Fine/Cost | Due |
|-----|-------|--------|----------|-----------|-----|
| 43 | 02/24/17 | HEARING SET:<br>Event: ARRAIGNMENT<br>Date: 03/01/2017    Time:<br>9:00 am<br>Judge: AQUILINA, ROSEMARIE E.<br>  Location: COURTROOM 5 -<br>VETERANS MEMORIAL<br><br>Result: WRITTEN WAIVER FILED | WHIPPLE | 0.00 | 0.00 |
| 44 | 02/24/17 | WRITTEN WAIVER OF ARRAIGNMENT<br>The following event:<br>ARRAIGNMENT scheduled for<br>03/01/2017 at 9:00 am has<br>been resulted as follows:<br><br>Result: WRITTEN WAIVER FILED<br>Judge: AQUILINA, ROSEMARIE E.<br>  Location: COURTROOM 5 -<br>VETERANS MEMORIAL | WHIPPLE | 0.00 | 0.00 |
| 45 | 02/24/17 | ARREST BOND<br><br>Arrest Bond Added to Case<br>with:<br>Action Code: CRIMINAL SEXUAL<br>CONDUCT - FIRST DEGREE<br>(Person Under Thirteen)<br>Arrest Date: 01/19/2017<br>Custody Location: DF<br>INCARCERATED IN JAIL<br>Bond Status: C30 BOND NOT<br>POSTED<br>Status Date: 02/24/2017<br>Blanket Bond: No<br>Okay to Apply: No<br>Bond Type: CR DENIED<br>DF IS IN NEWAYGO COUNTY JAIL | WHIPPLE | 0.00 | 0.00 |
| 46 | 02/21/17 | DISTRICT COURT BINDOVER<br>RECEIVED<br>Result Staff:<br>  Staff:   COURT REPORTER:<br>HAMLIN, JEAN ANN<br>Certification Number:  3218<br>(IDENTIFYING INFORMATION OF<br>THE VICTIM WAS REDACTED IN<br>THE DEFENDANT'S MOTION FOR<br>SUPPLEMENTAL DISCOVERY W/<br>BRIEF IN SUPPORT PURSUANT TO<br>THE ORDER TO SEAL RECORDS,<br>DATED 03/21/2017 - PLACED IN<br>CENTRAL RECORDS AS VOL 1B) | WHIPPLE | 0.00 | 0.00 |
| | | | Total: | 0.00 | 0.00 |

Totals By:  INFORMATION                 0.00        0.00
*** End of Report ***

CERTIFIED COPY
30TH CIRCUIT COURT
BARB SYRUM, COUNTY CLERK

APR 13 2017

I hereby certify that this document is a true and
correct copy of the original on file with the court.
Deputy Clerk

*Denhollander, et al. v. Aquilina, et al.*

*Case No. 17-cv-305*

# EXHIBIT 3

## TO PLAINTIFFS' FIRST AMENDED COMPLAINT

STATE OF MICHIGAN
IN THE 30ᵀᴴ CIRCUIT COURT FOR INGHAM COUNTY

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff,

Case No. 17-143-FC

v

**Hon. Rosemarie E. Aquilina**

LAWRENCE GERARD NASSAR,

Defendant.

_____/

### ORDER LIMITING PUBLIC DISCLOSURES BY COVERED INDIVIDUALS

One of this Court's paramount concerns is ensuring a fair trial to all parties. This concern prompted this Court's March 29, 2017 Order (the "*Original Order*") limiting public disclosures by witnesses and counsel for witnesses in *People v Nassar*, Case No. 17-143-FC (the "*Criminal Case*").

After entry of the Original Order, certain individuals and entities filed a federal lawsuit against this Court, Lawrence Nassar, and Attorney General Bill Schuette to enjoin enforcement of the Original Order. See *Denhollander v Aquilina*, W.D. Mich., Case No. 1:17-cv-00305. Based on the allegations in *Denhollander*, it appears that those individuals and entities misunderstand the scope and intent of the Original Order. Therefore, this Court vacates the Original Order and issues this Order (the "*Public-Disclosure Order*") to continue protecting the right to a fair trial with an impartial jury and prevent extrajudicial comments that would not only create a "carnival atmosphere," but would also prejudice this Court's ability to conduct a fair trial. *US v Scarfo*, 263 F3d 80, 94 (3d Cir 2001); *US v Brown*, 218 F3d 415 (5th Cir 2000). Accordingly, this Public-Disclosure Order is intended to address what this Court views as mistaken statements and beliefs about the intent of the Original Order.

Now, therefore, **IT IS ORDERED**:

1. The Original Order is **vacated**.

2. This Public-Disclosure Order applies *only* to *Covered Individuals*. A Covered Individual is one of the following:

   a. A party in the Criminal Case,

   b. An attorney who represents a party in the Criminal Case (and any member or employee of that attorney's law firm),

1

   c. An individual who has been (i) named in a court filing as a witness in the Criminal Case *and* (ii) served with a copy of this Order, with service established through a proof of service filed in the Criminal Case, or

   d. An attorney who represents a witness as described in Paragraph 2(c) of this order (and any member or employee of that attorney's law firm).

3. Attorneys in the Criminal Case are responsible for serving a copy of this Public-Disclosure Order on any witness that they list in court filings, and for filing a proof of service.

4. Any witness or attorney who becomes a Covered Individual through Paragraphs 2(c) or 2(d) of this Public-Disclosure Order may file an objection with this Court within 14 days of service of the order. This objection must be accompanied by a brief explaining the basis for that individual's objection and providing supporting legal authority. The objecting party must serve a copy on other parties in the Criminal Case.

5. "*Publicly*," as used in this Public-Disclosure Order, has its common meaning, and it includes statements on social media and statements to representatives of print, online, or television media. See, e.g., Random House Webster's Unabridged Dictionary (2d ed. 2001), p 1563 (defining *publicly* as "in a public or open manner or place").

6. Except as stated in this order, no Covered Individual may *publicly* share information relating to the Criminal Case, other than information available in a public court file.

7. If a Covered Individual shares information about the Criminal Case that is available in a public court file, the Covered Individual may only share direct quotations (without elaboration) from publicly available documents and must identify the document quoted.

8. No Covered Individual may publicly discuss the guilt or innocence of Defendant Lawrence Nassar with respect to the charges in the Criminal Case.

9. No Covered Individual may publicly discuss the strengths or weaknesses of the claims against Nassar in the Criminal Case.

10. No Covered Individual may publicly comment on the truthfulness or credibility of any other Covered Individual regarding the allegations in the Criminal Case.

11. When commenting publicly about the Criminal Case, a Covered Individual may not refer to Nassar by any word other than his name or "the defendant."

12. No Covered Individual may publicly disseminate the transcript of Nassar's preliminary examination in the Criminal Case or any other transcript in the Criminal Case.

13. No Covered Individual may possess a copy of the transcript of Nassar's preliminary examination unless the Covered Individual (or his or her law firm) has paid the necessary fee for a copy of that transcript. If a Covered Individual (or his or her law firm) has a copy of the transcript for which neither the Covered Individual nor his or her law firm has paid, the Covered Individual must immediately destroy all copies.

14. Nothing in this order shall be interpreted as prohibiting a Covered Individual from discussing civil or criminal claims against Nassar other than the specific claims at issue in the Criminal Case.

15. Nothing in this order shall be interpreted as prohibiting a Covered Individual from making any statement to law-enforcement agencies, medical personnel, therapists, attorneys, government agents, or similar parties about the Criminal Case or their personal experience with Nassar.

16. All attorneys participating in the Criminal Case are reminded of their obligations under Michigan Rule of Professional Conduct 3.6. This Court takes lawyers' ethical responsibilities seriously and is obligated to report any misconduct "that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer" to the Attorney Grievance Commission, as required under Michigan Rule of Professional Conduct 8.3(a).

17. This Public-Disclosure Order will remain in effect until the Criminal Case has ended and all direct appeals have concluded.


**IT IS SO ORDERED.**


Hon. Rosemarie E. Aquilina (P37670)
30th Circuit Court Judge

Dated: April 12, 2017

CERTIFIED COPY
30TH CIRCUIT COURT
BARB BYRUM, COUNTY CLERK

APR 13 2017

I hereby certify that this document is a true and
correct copy of the original on file with the court.
Deputy Clerk

3

*Denhollander, et al. v. Aquilina, et al.*

*Case No. 17-cv-305*

# EXHIBIT 4

**TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

## AFFIDAVIT AND DECLARATION OF H. JAMES WHITE

Affiant and Declarant H. James White, being first duly sworn, deposes and states under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I am an individual at least 18 years of age and competent to testify to the matters set forth herein.

2. I am the founder and owner of the law firm of White Law PLLC based in Okemos, Michigan.

3. The attorneys of White Law PLLC represent a number of alleged victims of sexual assault of Lawrence Nassar in Case No.: 1:17-cv-000257 in the United States District Court for the Western District of Michigan – Southern Division.

4. I do not represent the Complaining Witness in *People v Nassar*, Ingham County Circuit Court Case No.: 17-000143-FC before the Honorable Rosemarie E. Aquilina ("*People v Nassar*").

5. On April 12, 2017, I became aware of the Order Limiting Public Disclosures by Covered Individuals entered by Judge Aquilina in *People v Nassar* dated April 12, 2017 ("Second Gag Order").

6. After issuance of the Second Gag Order, Mr. Nassar's attorney in *People v Nassar*, Shannon Smith, communicated to me that she, on Nassar's behalf, intends to file a witness list in *People v Nassar* that includes the names of many individuals who have filed civil actions involving allegations of sexual assault by Nassar as well as several of the attorneys that represent these individuals in the various civil actions.

7. Ms. Smith also informed me that through her representation of Mr. Nassar that she is in possession of police reports that include the names of all of Mr. Nassar's alleged victims who

Initialed:

have filed reports with law enforcement and intends to name those individuals as witnesses on the witness list that she files on Mr. Nassar's behalf in *People v Nassar*.

8.  A substantial number of the Plaintiffs that White Law PLLC represents in Case No. 1:17-cv-000257 in the United States District Court for the Western District of Michigan have filed reports with law enforcement regarding their sexual assaults by Mr. Nassar, and it is my belief based on the representations of Ms. Smith that some or all of these individuals will be named as witnesses on Mr. Nassar's witness list that will be filed in *People v Nassar*.

9.  Further Affiant sayeth not.


**H. James White**
Affiant                                         Date: 4·14·2017


**STATE OF MICHIGAN**     )
                          ) s.s.
**COUNTY OF** Ingham      )

Subscribed and sworn by Affiant **H. James White** before me this 14 day of April, 20 17 , in Ingham County, State of Michigan.

/s/ Blake Lertzman

Printed Name: Blake Lertzman
Notary Public, State of Michigan , County of Ingham .
My commission expires Oct 29 2023
Acting in the County of Ingham .

BLAKE LERTZMAN
NOTARY PUBLIC
COUNTY OF INGHAM
My Commission Expires
October 29, 2023
Acting in the County of
Ingham
STATE OF MICHIGAN

Initialed:

*Denhollander, et al. v. Aquilina, et al.*

*Case No. 17-cv-305*

# EXHIBIT 5

## TO PLAINTIFFS' FIRST AMENDED COMPLAINT

## AFFIDAVIT OF LINDSEY LEMKE

Affiant, Lindsey Lemke, being first duly sworn, deposes and states:

1. I am an individual at least 18 years of age and competent to testify to the matters set forth herein.

2. I am not under the influence of alcohol or narcotics at the time of making this statement.

3. I am one of multiple Plaintiffs in Case No.: 1:17-cv-000257 in the United States District Court Western District of Michigan – Southern Division ("Lawsuit").

4. I was previously only identified in the Lawsuit as a Jane Doe.

5. In the Lawsuit, I set forth how Lawrence Nassar ("Nassar") sexually assaulted, abused, molested, and harassed me while I was a minor and as an adult.

6. In particular, I set forth in the Lawsuit that Nassar would usually sexually assault me under the guise of medical treatment by first massaging my back and moving downwards toward my buttocks. Nassar would then put his hands on my genital area, push on the sides of my vagina, and rub my vagina over the top of my clothes. After that, Nassar would reach his hand into my underwear and rub my bare skin on and around my vagina. Finally, Nassar would digitally penetrate my vagina. Nassar did these acts without wearing gloves, without using lubricant, without my parents' consent, and without my consent.

7. Over the course of approximately four years, Nassar sexually assaulted, battered, abused, and molested me on approximately 600 different occasions.

8. When I first came forward about Nassar sexually assaulting me, I chose to remain anonymous.

Initialed: _____

9. However, over the course of several months, I have chosen to make my name public in the Lawsuit for a number of reasons, including:

    a.  It has become apparent to me that Nassar sexually assaulted a large number of young women over the course of many years.

    b.  It is my belief that a large number of women sexually assaulted by Nassar have come forward, but choose to remain anonymous because of the stigma, controversy, possible retaliation, and other factors associated with having their identity known publicly.

    c.  It is my belief that Nassar sexually assaulted women who have not come forward and may be afraid, ashamed, or embarrassed to come forward.

    d.  I believe that the issue of sexual assault needs a public voice.

    e.  I believe that by speaking publicly, I can raise awareness of sexual assault and the prevention of sexual assault.

    f.  I believe that by speaking publicly, I can help prevent future acts of sexual assault against women.

10. On or about March 29, 2017, I learned that Judge Rosemarie E. Aquilina had issued an Order ("Gag Order") relating to Nassar and allegations of sexual assault against him. (Exhibit A)

11. Prior to the Gag Order, I gave numerous interviews with various news media outlets regarding the sexual assaults Nassar committed against me.

12. On or about April 7, 2017, I learned that a Temporary Restraining Order was issued to block the Gag Order.

13. After learning this information, I felt relieved to know that I could again serve as an advocate for sexual assault awareness without fear of being fined or jailed.

Initialed: _____

14. However, on or about April 12, 2017, I learned that Judge Rosemarie E. Aquilina had issued a new Order ("Gag Order II") relating to Nassar and allegations of sexual assault against him. (Exhibit B)

15. I am now afraid again to speak publicly about Nassar's sexual assaults because of the Gag Order II and the potential to be held in contempt of court and fined or jailed.

16. I am afraid that statements and recordings made prior to issuance of the Gag Order or Gag Order II that have not yet been made public will be made public. I am afraid that if these statements are made public, I will be held in contempt of court and fined or jailed.

17. I desire to publicly speak about and discuss my experience of sexual assault and sexual abuse at the hands of Nassar, but I am now afraid to be an advocate because of the possible repercussions I face if I violate the Gag Order II.

18. I am afraid that other women who were sexually assaulted by Nassar will also be deterred from coming forward or discussing their abuse publicly or privately because of the Gag Order II.

19. Further Affiant sayeth not.

_Lindsey Lemke_                                         Date: 4/13/2017
**Lindsey Lemke**
Affiant

**STATE OF MICHIGAN** )
                                      ) s.s.
**COUNTY OF** Ingham )

Subscribed and sworn by Affiant **Lindsey Lemke** before me this 13 day of April ,
20 17 , in Ingham County, State of Michigan.

/s/ Blertzman
Printed Name: Blake Lertzman
Notary Public, State of Michigan , County of Ingham .
My commission expires Oct 29, 2023
Acting in the County of Ingham .

Page 3 of 3

Initialed: LL